**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **CORNELIA NOEL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:15-cv-01087** |
| | § | |
| **SHELL OIL COMPANY, SHELL** | § | |
| **INTERNATIONAL E&P INC., and** | § | |
| **DEBO OLADUNJOYE,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS SHELL OIL COMPANY'S**
**and SHELL INTERNATIONAL EXPLORATION & PRODUCTION INC.'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Defendants Shell Oil Company and Shell International Exploration & Production, Inc.,

file this Motion for Summary Judgment and respectfully show the Court as follows:

Dated:  February 3, 2017

Respectfully submitted,

By:      /s/ Lori M. Carr
         Lori M. Carr, Lead Counsel
         Texas Bar No. 13815690
         Southern District No. 348477
         Terah Moxley
         Texas Bar No. 24074768
         Southern District No. 2600083
         ESTES THORNE & CARR PLLC
         3811 Turtle Creek Blvd., Suite 2000
         Dallas, Texas  75219
         Telephone: (214) 599-4000
         Telecopier: (214) 599-4099
         lcarr@estesthornecarr.com
         tmoxley@estesthornecarr.com

         **ATTORNEYS FOR DEFENDANTS**
         **SHELL OIL COMPANY and SHELL**
         **INTERNATIONAL EXPLORATION**
         **AND PRODUCTION INC.**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. ii

Table of Authorities ............................................................................................................ iv

Table of Exhibits ............................................................................................................... vii

Nature and Stage of the Proceedings .................................................................................. 1

Factual Background ............................................................................................................. 1

    General Background ...................................................................................................... 1

    Noel Transfers to Nigeria ............................................................................................. 3

    Noel Repatriated to Houston ......................................................................................... 4

    Venkataraman Wants to Terminate Noel's Employment ............................................. 6

    Venkataraman Transfers and Noel Applies for His Job ............................................... 6

    Crude Oil Prices Plummet and Noel's Position is No Longer Viable .......................... 7

    Noel Informed of Job Elimination—*Then* Complains
    of Discrimination and Retaliation ............................................................................... 8

Issues Presented ................................................................................................................ 10

Summary of the Argument ................................................................................................ 10

Argument & Authorities ................................................................................................... 11

    A.    Noel's claims arising out of her employment in Nigeria
            fail as a matter of law because Title VII and Chapter 21
            do not cover non-citizens working extraterritorially. ............................................ 11

    B.    Alternatively, Noel's claims arising out of her employment
            in Nigeria fail as a matter of law because they are barred
            by the applicable statutes of limitations. ............................................................... 12

    C.    Noel's claim of sex discrimination fails as a matter of law. ................................. 13

            1.    Noel cannot establish a prima facie case of sex discrimination ................ 15

a.    Many of Noel's complaints cannot support
a sex discrimination claim because they
do not rise to the level of an adverse employment action..............15

b.    Noel cannot meet the second element of her prima facie case. .....16

c.    Noel cannot establish the fourth element
of her prima facie case....................................................................17

2.    SIEP has articulated a legitimate, nondiscriminatory reason
for the elimination of Noel's job and the termination
of her employment. ......................................................................18

3.    Noel cannot meet the ultimate causation standard
in her sex discrimination claim. ..................................................18

D.    Noel's claim of retaliation fails as a matter of law. ...............................20

1.    Noel did not engage in protected activity
until *after* SIEP informed her of the elimination of her job......................21

2.    Noel cannot establish the third element
of her prima facie case of retaliation..........................................22

3.    SIEP has articulated a legitimate, nondiscriminatory reason
for the termination of Noel's employment..................................23

4.    Noel cannot satisfy her ultimate causation burden. ...................24

E.    Noel's claims against Defendant Shell Oil Company fail
as a matter of law because it was not her employer...............................25

Conclusion ......................................................................................................25

Certificate of Service ....................................................................................25

## TABLE OF AUTHORITIES

<u>Cases</u>

*Arrieta v. Yellow Transp., Inc.*,
   No. 3:05-CV-2271, 2008 WL 5220569 (N.D. Tex. Dec. 12, 2008) ...................................... 16

*Bryant v. Compass Grp. USA, Inc.*,
   413 F.3d 471 (5th Cir. 2005) .................................................................................................. 19

*Burlington N. & Santa Fe Ry. Co. v. White*,
   126 S. Ct. 2405 (2006) ........................................................................................................... 20

*Dollis v. Rubin*,
   77 F.3d 777 (5th Cir. 1995),
   *overruled on other grounds*, *Drake v. Nicholson*, 324 F. App'x 328 (5th Cir. 2009) ............ 16

*Douglass v. United Servs. Auto Ass'n*,
   79 F.3d 1415 (5th Cir.1996) .................................................................................................. 20

*E.E.O.C. v. Omni Hotels Mgmt. Corp.*,
   516 F. Supp. 2d 678 (N.D. Tex. 2007) ............................................................................ 17, 19

*Garcia v. Elf Atochem N. Am.*,
   28 F.3d 446 (5th Cir. 1994), *abrogated on other grounds*
   *by Oncale v. Sundowner Offshore Servs., Inc.*, 118 S. Ct. 998 (1998) .................................. 25

*Hough v. Tex. Dep't of State Health Servs.—Meat Safety Assur. Unit*,
   No. H-10-2206, 2012 WL 3756536 (S.D. Tex. Aug. 28, 2012) ............................................ 22

*Huckabay v. Moore*,
   142 F.3d 233, 238 (5th Cir. 1998) ........................................................................................ 13

*Iwata v. Styker Corp.*,
   59 F. Supp. 2d 600 (N.D. Tex. 1999) .............................................................................. 11, 22

*Machinchick v. PB Power, Inc.*,
   398 F.3d 345 (5th Cir. 2005) ................................................................................................ 14

*Martin v. Kroger Co.*,
   65 F. Supp. 2d 516 (S.D. Tex. 1999) .................................................................................... 16

*McCoy v. City of Shreveport*,
   492 F.3d 551 (5th Cir. 2007) ................................................................................................ 16

*Mota v. Univ. of Tex. Houston Health Sci. Ctr.*,
   261 F.3d 512 (5th Cir. 2001) .......................................................................................... 11, 22

*Nasti v. CIBA Specialty Chems. Corp.*,
    492 F.3d 589 (5th Cir. 2007) ........................................................................... 14, 15

*Pineda v. Utd. Parcel Serv., Inc.*,
    360 F.3d 483 (5th Cir. 2004) ........................................................................... 21, 24

*Quantam Chem. Corp. v. Toennies*,
    47 S.W.3d 473 (Tex. 2001) ................................................................................... 14

*Ramsey v. Henderson*,
    286 F.3d 264 (5th Cir. 2002) ................................................................................. 20

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    120 S. Ct. 2097 (2000) ................................................................................... 19, 20

*Rubinstein v. Admin'rs of Tulane Educ. Fund*,
    218 F.3d 392 (5th Cir. 2000) ................................................................................. 19

*Shekoyan v. Sibley Int'l*,
    409 F.3d 414 (D.C. Cir. 2005) ....................................................................... 11, 21

*Strong v. Univ. Healthcare Sys., L.L.C.*,
    482 F.3d 802 (5th Cir. 2007) ................................................................................. 24

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    101 S. Ct. 1089 (1981) ......................................................................................... 14

*Vadi v. Miss. State Univ.*,
    218 F.3d 365 (5th Cir. 2000) ................................................................................. 13

*Wal-Mart Stores, Inc. v. Canchola*,
    121 S.W.3d 735 (Tex. 2003) ................................................................................. 14

*Winters v. Chubb & Son, Inc.*,
    132 S.W.3d 568 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ................................. 16, 20

*Ysleta Indep. Sch. Dist. v. Monarrez*,
    177 S.W.3d 915 (Tex. 2005) ................................................................................. 17

**<u>Statutes</u>**

42 U.S.C. § 2000e(f) ............................................................................................ 11

42 U.S.C. § 2000e-1(a) ................................................................................... 11, 22

42 U.S.C. § 2000e-3 ............................................................................................ 21

42 U.S.C. § 2000e-5(e)(1) ..................................................................................... 13

Tex. Lab. Code § 21.001(1) ................................................................... 14

Tex. Lab. Code § 21.051 ................................................................. 14, 25

Tex. Lab. Code § 21.055 ................................................................. 22, 25

Tex. Lab. Code § 21.111 ................................................................. 11, 22

Tex. Lab. Code § 21.202(a) .................................................................. 13

**<u>Rules</u>**

Fed. R. Civ. P. 56(c) ........................................................................... 10

# TABLE OF EXHIBITS

**Exhibit Description**                                                                                                    **Tab**

Transcript from December 8–9, 2016 deposition
of Plaintiff Cornelia Noel with deposition exhibits 3–4, 7, 9, 14–15, 17–19, 21–25, 28–39 .........A

Transcript from January 4, 2017 deposition
of Alyssa Snider with deposition exhibits 2, 5, 11–12 ..................................................................B

Transcript from January 4, 2017 deposition
of Doug Peart with deposition exhibits 1, 3–4.............................................................................C

Transcript from January 6, 2017 deposition
of Kelly Rogers with deposition exhibits 7, 10.............................................................................D

Transcript from January 6, 2017 deposition of Susan Moore......................................................E

Declaration of Alyssa Snider with exhibits F1–F7 ......................................................................F

Declaration of Doug Peart ...........................................................................................................G

Declaration of Jamie Allen ..........................................................................................................H

Plaintiff's Responses and Objections
to Defendants' First Requests for Admissions to Plaintiff ...........................................................I

Declaration of Terah Moxley with exhibits J1–J2.......................................................................J

Unreported Cases .........................................................................................................................K

*Arrieta v. Yellow Transp., Inc.*,
No. 3:05-CV-2271, 2008 WL 5220569 (N.D. Tex. Dec. 12, 2008)

*Hough v. Tex. Dep't of State Health Servs.—Meat Safety Assur. Unit*,
No. H-10-2206, 2012 WL 3756536 (S.D. Tex. Aug. 28, 2012)

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Cornelia Noel ("Plaintiff" or "Noel") asserts claims for gender discrimination and retaliation under Title VII and the Texas Labor Code. *See* Pl.'s 1st Am. Compl. [ECF Doc. No. 19] at 10–12. Defendants[1] Shell Oil Company and Shell International Exploration & Production Inc., deny Noel's allegations and move for summary judgment on all of her claims. Discovery is closed. The deadline for filing dispositive motions is February 3, 2017. Docket call is set for May 12, 2017.

## FACTUAL BACKGROUND

**General Background**

1.      Noel began working for Defendant Shell International Exploration & Production Inc.[2] in October 2008 as a Senior Staff Subsea Systems Engineer (Job Grade Level 2) in the Projects and Technology organization. Ex. A, Pl. Dep., at 39:2–40:12 and Dep. Ex. 4; Ex. B, Snider Dep., at 96:20–97:4.

2.      SIEP reserves its "Level 2" job grade designation for employees who are highly-experienced, subject-matter experts, capable of operating as a senior level individual contributor or as the manager of a team. Ex. F, Snider Decl., ¶ 10. SIEP expects individuals at this job grade level to demonstrate and continue to enhance leadership behaviors in the areas of authenticity, growth, collaboration, and performance. *Id.*

3.      During her employment, Noel held five different jobs in three different business units under numerous supervisors and managers, both male and female. Ex. A, Pl. Dep., at

---

[1] Though Debo Oladunjoye's name still appears in the case caption, he is not a party to this suit. Noel does not assert any claims against him. *See generally* Pl.'s 1st Am. Compl. [ECF Doc. No. 19]. In addition, he has never been served.

[2] Shell International Exploration & Production, Inc. is abbreviated, and known as, "SIEP." Noel worked for Defendant Shell International Exploration & Production Inc., except during her assignment in Nigeria when she was employed by Shell Nigeria Exploration & Production Company. Ex. F, Snider Decl., ¶ 8. Noel has never been employed directly by Shell Oil Company. *Id.* As such, references in this Motion to "SIEP" refer only to Shell International Exploration & Production Inc., unless otherwise noted.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**          **Page 1**

225:14–23 and Dep. Ex. 4; Ex. B, Snider Dep., at 96:20–97:16 and Dep. Ex. 12. Noel exhibited the same recurring behavioral performance issues and recurring complaints in each environment. Ex. B, Snider Dep., at 62:15–63:12, 101:22–102:21, 104:18–25 and Dep. Ex. 12. These performance issues involved an inability to effectively communicate or collaborate; an overly-critical view of others' work; a superiority or know-it-all attitude; failing to accept personal responsibility; failing to accept constructive criticism; using lengthy, derisive emails instead of face to face communication; and general disagreement and discord in work groups in which she was assigned. *See generally* Ex. B, Snider Dep., at Dep. Ex. 12; *see generally* Ex. A, Pl. Dep., at 225–245 and Dep. Ex. 21, 22, 23, 24, 25.[3]

4.  Noel continuously received feedback on her performance issues, but she neither acknowledged nor corrected her deficiencies. *See generally* Ex. B, Snider Dep., at Dep. Ex. 12. As an example, during a coaching meeting with her then-manager, Jane Zhang (female), Noel made the following comment, "I will not change my mind no matter what you say." Ex. A, Pl. Dep., at Dep. Ex. 28. And in an email relating to her dysfunctional work relationships in Nigeria, she stated that she was "blameless." Ex. D, Rogers Dep., at Dep. Ex. 10.

5.  Noel's recurring complaints in each of these jobs were that her ideas were ignored; others took credit for her ideas and work; leadership was biased and/or incompetent; and that she experienced gender discrimination and bullying. Ex. A, Pl. Dep., at Dep. Ex. 21–25, 30, 32–33. In a 2012 email string with one of Noel's managers in which Noel is complaining about coworkers taking credit for her ideas, Noel analogizes her coworkers to cancer cells and the company's "leadership failures" to a weakened immune system that could lead to death. *See id.* at 256:6–262:2 and Dep. Ex. 29; *see also id.* at Dep. Ex. 30, 32.

---

[3] Remarkably, Noel received nearly identical feedback from each supervisor at SIEP and from supervisors at prior employers, including Texaco, Chevron, and BP. Ex. A, Pl. Dep., at 288:24–300:19 and Dep. Ex. 34–39.

6.      Noel never thought that any of her supervisors' assessments of her performance were fair. *Id.* at 218:6–220:17 (disagreement with supervisor's comments in 2014 performance appraisal), 222:2–223:11 and 223:24–225:5 (same for 2013 performance appraisal), 232:15–233:17 and 248:9–250:9 (same for 2011 performance appraisal), 246:21–23 and 247:4–248:8 (same for 2010 performance appraisal).

**Noel Transfers to Nigeria**

7.      In March 2012, Noel and her supervisors agreed that it was time for a career move. This was due to, as Ms. Zhang put it, "the stressful and abnormal working environment that [Noel] created for the subsea team." Ex. A, Pl. Dep., at Dep. Ex. 31.

8.      Noel applied for and was offered a job as Head of Subsea Hardware for Shell Nigeria Exploration & Production Company ("SNEPCo") in Lagos, Nigeria. *See* Ex. A, Pl. Dep., at 184:2–185:10. She held this job from January 10, 2013, through June 30, 2014. Ex. A, Pl. Dep., at 41:7–19. In this expatriate role, the ability to interface with management, communication skills, and collaboration was even more critical.[4] While in this role, Noel lived in Nigeria, her job duties were performed in Nigeria, and the supervisor she reported to was likewise located in Nigeria. Ex. F, Snider Decl., ¶ 15.

9.      However, while on this assignment, Noel continued to have the same communication and relationship issues, despite continuous feedback. *See* Ex. B, Snider Dep., at Dep. Ex. 12 at 10–11. She also made the same complaints—being ignored, others taking credit for her work, leadership bias, and bullying. *See id.*

10.     In April 2013, Noel filed a grievance of bullying and gender discrimination.[5] Ex.

---

[4] This position expressly required excellent communication, collaboration, and leadership skills. *See* Ex. A, Pl. Dep., at 184:2–185:10 and Dep. Ex. 14.

[5] Noel claims that she was subjected to gender discrimination as early as September 2012 during her pre-assignment interview when she was allegedly told that she would need to be a "calming influence" on David March, a co-worker in Nigeria. Ex. A, Pl. Dep., at 44:8–45:11; *see also* Pl.'s 1st Am. Compl. [ECF Doc. No. 19], ¶¶ 20–21.

F, Snider Decl., at Ex. at F2–F3. Human resources employees in Nigeria investigated this complaint, finding no evidence of gender or other discrimination or bullying. *Id.* at Ex. F4.

11.     In February 2014, Noel protested her 2013 performance appraisal and accused her supervisor of retaliation for speaking out on the "poor work situation" in Nigeria. Ex. F, Snider Decl., ¶ 18 and Ex. F5. In her email to her supervisor and his direct chain of command, she states, "we are not here to like each other and be best buddies." *Id.* at Ex. F5. Noel's supervisor re-opened her 2013 appraisal, allowed her to submit a self-evaluation, met with her one-on-one, and updated his assessment based on her input. *Id.* at Ex. F6.

12.     Noel's behaviors did not improve and, on March 21, 2014, she was informed that she would be repatriated to the United States. Ex. A, Pl. Dep., at 91:9–14, 189:7–13. This transfer resulted from Noel's continued inability to collaborate with her peers. Ex. B, Snider Dep., at 101:22–102:21; Ex. A, Pl. Dep., at Dep. Ex. 17; Ex. C, Peart Dep., at Dep. Ex. 1; Ex. H, Allen Decl., ¶ 5.

13.     Noel's repatriation came as no surprise to her, as she claims she had a dream foreshadowing the event. Ex. A, Pl. Dep., at 192:23–194:9 and Dep. Ex. 18.

14.     Under SIEP's policy, the normal treatment of someone dismissed from an expatriate role for reasons of performance or misconduct is termination. Ex. F, Snider Decl., ¶ 21. However, SIEP found a role for Noel in Houston, Texas. *Id.*

**Noel Repatriated to Houston**

15.     In July 2014, upon her repatriation back to Houston, Noel assumed the role of Global SURF[6] Lead in Houston, reporting to Gouri Venkataraman. *See* Ex. A, Pl. Dep., at Dep.

---

Notwithstanding this alleged statement, Noel moved to Nigeria anyway and began working there in January 2013. Ex. A, Pl. Dep., at 41:7–19. The other allegations of gender discrimination, as set forth in Paragraphs 22–61 of Noel's live pleading, all occurred while Noel was working in Nigeria, as did her allegation of bullying, harassment, and retaliation referenced in Paragraph 62. *See* Ex. A, Pl. Dep., at 46:4–52:14, 110:12–24.

[6] "SURF" stands for "Subsea, Umbilicals, Risers, and Flowlines." Ex. E, Moore Dep., at 25:3–6.

Ex. 4; Ex. C, Peart Dep., at 9:17–18:1, 12:7–13:8. This was the only job available for which Noel was qualified. Ex. C, Peart Dep., at 12:7–13:8, 51:24–53:4.

16.     The SURF organization, based out of Houston, provided technical support for other locations with subsea issues. Ex. G, Peart Decl, ¶ 7. With engineering requests coming in from around the world, the SURF organization needed a primary point of contact to filter through these requests and connect experts from the Houston hub to projects across the globe. Ex. G, Peart Decl, ¶ 7. Thus, as part of a restructuring that occurred several months before Noel's repatriation, the SURF organization created the Global SURF Lead role to serve this liaison function. Ex. C, Peart Dep., at 19:24–20:17, 26:17–27:9; Ex. G, Peart Decl, ¶ 7.

17.     However, Noel did not make an impact in the new role, in large measure due to her inability to create and sustain collaborative relationships. Ex. C, Peart Dep., at 14:10–15:12, 19:24–26:16. Noel's supervisor's comments in her 2014 performance review (which are consistent with feedback in her other roles) sum up her performance in this role:

> **\* Cornelia comes across heavy on advocacy and less on enquiry [sic] (seeking to understand) and often displays a "know-it-all" attitude—this can be off-putting to people**
>
> **\* Cornelia has difficulty collaborating to create solutions and seeking common ground as a way of making progress—things often seem to end in a sub-optimal place as it relates to results delivery**
>
> **\* Cornelia comes across defensive and lacking personal accountability when discussing progress and results—she believes she is right and others are uniformly at fault/are flawed or biased**
>
> **The above are not an issue of any specific [lack of] technical ability/skillset or anything even too specific to the role—indeed almost every role in the organization requires being able to work with others to deliver results, i.e., <u>this is core competence</u>.**

Ex. A, Pl. Dep., at 218:6–220:25 and Dep. Ex. 21 (emphasis added).

18.     Noel agrees with the comment that almost every role in the organization requires being able to work with others to deliver results and that this ability is a core competence. Ex. A, Pl. Dep., at 220:18–221:7.

**Venkataraman Wants to Terminate Noel's Employment**

19.     In November 2014, Mr. Venkataraman wanted to terminate Noel for the performance issues outlined in Paragraph 20, which he felt were not redeemable. Ex. B, Snider Dep., at 52:2–25, 55:19–25, 93:4–94:17; Ex. C, Peart Dep., at Dep. Ex. 3.

20.     In connection with the request to terminate, Alyssa Snider, Human Resources Manager for the SURF organization, accumulated documents pertaining to Noel's work history, including performance reviews and the feedback Noel had received throughout her employment. Ex. B, Snider Dep., at 93:4–94:17. Exhibit 12 to Ms. Snider's declaration is a summary of that work history. *Id.* at 81:1–8.

21.     Termination decisions are not made lightly at SIEP. *See id.* at 94:5; Ex. F, Snider Decl., ¶ 24. Thus, Ms. Snider undertook the task of reviewing Noel's performance history to determine whether a clear pattern of behavior over a sufficient period of time existed that would support a termination decision. Ex. B, Snider Dep., at 93:4–94:17.

**Venkataraman Transfers and Noel Applies for His Job**

22.     In December, 2014, Noel applied for her supervisor's position of Delivery Manager, which was vacant due to his transfer.[7] Ex. C, Peart Dep., at 48:9–18. This role carried a higher job grade designation than Noel possessed. Ex. G, Peart Decl, ¶ 10.

---

[7] This position also required collaborative relationship building skills, leadership skills, and teamwork.  See position description Ex. A, Pl. Dep., at 185:12–186:1 and Dep. Ex. 15.

23.     Susan  Moore  (white/female)  obtained  the  position  because  she  was  more qualified. Ex. A, Pl. Dep., at 78:1–9, 195:18–197:7 and Dep. Ex. 19; Ex. C, Peart Dep., at 48:12–50:15 and Dep. Ex. 4.

24.     Noel does not complain about not getting the position; she only complains that she was not given an opportunity to interview for the position. Ex. A, Pl. Dep., at 74:18–75:15. She  claims  that  she  was  not  given  an  interview  based  on  her  2013  and  2014  performance reviews, which she claims were completed in a discriminatory and retaliatory manner. *See id.*; *see also id.* at 82:1–84:17, 111:15–113:13.

25.     However,  no  one  was  interviewed  for  this  role.  Ex.  G,  Peart  Decl,  ¶ 12.  The decision was made based on applications and prior work experience. *See* Ex. G, Peart Decl, ¶ 12. In addition, this Delivery Manager role carried a "Level 1" job grade and Ms. Moore was the only candidate with that classification who applied. *See* Ex. G, Peart Decl, ¶ 12.

**Crude Oil Prices Plummet and Noel's Position is No Longer Viable**

26.     Crude oil prices began plummeting in late 2014 and early 2015. Ex. F, Snider Decl., ¶ 26; Ex. G, Peart Decl, ¶ 13. This economic environment led to a significant reduction of the workload activity in the Nigeria and Malaysian portfolios, which directly impacted Noel's role. Ex. F, Snider Decl., ¶ 26; Ex. G, Peart Decl, ¶ 13.

27.     At  the  beginning  of  2015,  it  became  clear  that  Noel's  position  was  no  longer needed as a full-time position.[8] *See* Ex. B, Snider Dep., at 56:15–57:1. Indeed, Noel foresaw this event as early as the third quarter of 2014, stating, "In Q3 2014, I made Gouri aware that the Global SURF Projects role was not viable." Ex. A, Pl. Dep., at 134:13–137:10 and Dep. Ex. 9. Noel also acknowledged the decline in demand for her role in an email to Mr. Peart on January

---

[8] At the time Noel was transferred into this position in 2014, there was no intent to dissolve it. Ex. C, Peart Dep., at 29:7–30:24, 62:15–64:20, 69:3–17.

22, 2015. Ex. A, Pl. Dep., at 128:20–130:23 and Dep. Ex. 7. Noel's supervisor, Ms. Moore, forwarded this email to Ms. Snider, commenting, "it appears she does not currently have remaining responsibilities." *Id.* at 132:12–133:3 and Dep. Ex. 7.

28.    Therefore, in January 2015, due to the economic downturn in the oil and gas industry and correlated decline in exploration and production around the globe, together with Noel's inability to effectively communicate and add value in her role, the decision was made to eliminate Noel's position and absorb the little remaining work within another role in the organization.[9] Ex. G, Peart Decl, ¶ 15; Ex. B, Snider Dep., at 24:3–10, 56:15–57:1, 107:25–108:4, and Dep. Ex. 5. And by late 2015, the duties were so negligible that no one was needed to perform them. Ex. E, Moore Dep., at 40:14–43.24.

**Noel Informed of Job Elimination—*Then* Complains of Discrimination and Retaliation**

29.    On February 16, 2015, Noel learned of the elimination of her position and was given an opportunity to find another position internally, but she was also highly encouraged to seek employment externally given her performance history and damaged relationships in the organization. Ex. I at Req. Nos. 17 and 21; Ex. A, Pl. Dep., at 139:16–141:23, 157:15–159:7; Ex. G, Peart Decl, ¶ 16. Given Noel's pattern of behavioral issues in multiple organizations, with multiple supervisors and teams of peers, SIEP recognized that it would be very difficult for Noel to obtain a new role inside the company and that the job elimination might result in the termination of Noel's employment. Ex. F, Snider Decl., ¶ 28; Ex. G, Peart Decl, ¶ 16.

30.    After this same February 16th meeting, Noel complained that her 2013 and 2014 performance appraisals were discriminatory and retaliatory. *See* Ex. A, Pl. Dep., at 160:13–

---

[9] Mr. Peart was never aware that Noel complained of gender discrimination or retaliation prior to the filing of this lawsuit. Ex. G, Peart Decl, ¶ 18.

161:10; Ex. B, Snider Dep., at 86:23–88:9 and Dep. Ex. 11.[10] However, Noel admits that this claim is merely her opinion, and she is not aware of any male employees who were treated more favorably. Ex. A, Pl. Dep., at 111:15–113:13. With respect to her retaliation claim, Noel claims that there was a "cultural bias against women in general that spilled over into sort of retaliation." Ex. A, Pl. Dep., at 59:17–61:7.

31.     Noel admits she did not make any complaints of gender bias to Mr. Venkataraman. Ex. A, Pl. Dep., at 102:9–12. She believes he was aware of her prior complaint because it was referenced in her 2013 appraisal, but she has no personal knowledge of this. Ex. A, Pl. Dep., at 100:14–102:6.

32.     Noel alleges that several gender-based comments were made to her. Ex. A, Pl. Dep., at 70:14–72:16. However, all were made during her employment in Nigeria, by individuals who were not involved in her termination. *See id.*; Ex. F, Snider Decl., ¶ 27.

33.     In March and April 2015, Ms. Snider conducted a thorough investigation into Noel's complaints and found no evidence of discrimination or retaliation. Ex. B, Snider Dep., at 24:11–28:12, 77:10–16, 86:23–88:9, 101:22–102:21.

34.     Noel did not find another job within the company and her employment ended in April 2015. Ex. B, Snider Dep., at 16:10–21, 67:9–68:16.

35.     Noel filed a charge of discrimination with the EEOC on February 26, 2015, alleging race, gender, and national origin discrimination and retaliation. Ex. A, Pl. Dep., at 41:20–43:9 and Dep. Ex. 3.

36.     Noel did not obtain U.S. citizenship until April 2016. *Id.* at 26:18–27:4.

---

[10] Although Noel claims she complained in December 2014, there is no evidence of such a complaint. Ex. A, Pl. Dep., at 115:23–116:20. She sent an email on December 31, 2014, to Mr. Peart complaining about a lot of things but not discrimination or retaliation. Ex. B, Snider Dep., at Dep. Ex. 2. Noel sent a detailed complaint to Ms. Snider in February 2015 which is dated December 17, 2014. Ex. D, Rogers Dep., at Dep. Ex. 7. However, Noel told Ms. Snider that it was dated December 17th because that is when she started compiling the information, much of which postdates December 17. Ex. F, Snider Decl., ¶ 31.

37.     Noel refuses to speculate about whether her employment ended because she is female, claiming instead that the facts relied upon to support her termination have no basis in fact. Ex. A, Pl. Dep., at 56:2–25. Yet, she admits that she does not know what facts were relied upon. Ex. A, Pl. Dep., at 58:19–60:22. She merely speculates that the facts relied upon to terminate her employment were those contained in her 2013 and 2014 performance appraisals. *See id.* As stated in Paragraph 33, the undisputed facts refute Noel's speculation.

## ISSUES PRESENTED[11]

Noel's claims cannot survive summary judgment for the following reasons:

1.     Noel claims stemming from her employment in Nigeria are not actionable because neither Title VII nor Chapter 21 of the Texas Labor Code applies to non-U.S. citizens working extraterritorially.

2.     Noel's claims arising out of alleged adverse employment actions that occurred in Nigeria are barred by the applicable statutes of limitations.

3.     Noel cannot establish a claim for gender discrimination because she cannot make out a prima facie case, SIEP has articulated a legitimate, non-discriminatory business reason for the actions about which Noel complains, and Noel has no evidence this reason is both false *and* a pretext for gender discrimination, or that her gender was a motivating factor in SIEP's actions;

4.     Noel cannot establish a retaliation claim because she cannot make out a prima facie case of retaliation and, even if she could, she has no evidence that she would not have been subjected to such conduct but for her alleged protected activity; and

5.     Noel's claims against Defendant Shell Oil Company fail because Noel cannot prove that an employee-employer relationship existed.

## SUMMARY OF THE ARGUMENT

Despite admitting that she does not know the facts that lead to the termination of her employment, Noel nonetheless brings claims of sex discrimination and retaliation against her former employer, SIEP. Well over half of the allegations in Noel's live pleading fail to pass the

---

[11] The well-established summary judgment standard applies to each of the issues presented in this Motion. *See* Fed. R. Civ. P. 56(c). Here, Noel cannot satisfy the burden of persuasion that the law imposes upon a plaintiff claiming discrimination and retaliation.

most limited scrutiny—they are not even covered by Title VII or Chapter 21 of the Texas Labor Code because they arise out of Noel's employment in Nigeria. In addition to not being actionable under the statutes at issue, they are time-barred. Thus, all that remains of Noel's claims are her subjective belief that she was discriminated against because of her sex and her unsupportable argument that because her job ended after she complained in February 2015 the former caused the latter. Neither gets Noel over the hurdle of summary judgment. Thus, Defendants' Motion should be granted, and Noel's claims should be dismissed with prejudice.

### ARGUMENTS & AUTHORITIES

**A.**  **Noel's claims arising out of her employment in Nigeria fail as a matter of law because Title VII and Chapter 21 do not cover non-citizens working extraterritorially.**

The plain language of Title VII exempts from its coverage "the employment of aliens outside any State." 42 U.S.C. § 2000e-1(a). More simply, "Title VII does more than merely exclude an alien employed overseas from protection; it affirmatively grants protection only to a 'citizen of the United States.'" *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 421 (D.C. Cir. 2005) (citing 42 U.S.C. § 2000e(f) (Title VII's definition of "employee")); *see also Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 n.34 (5th Cir. 2001) (noting that "Title VII does not govern aliens employed outside the United States"); *Iwata v. Stryker Corp.*, 59 F. Supp. 2d 600, 603–04 (N.D. Tex. 1999) ("Non-citizens working outside the United States are not protected [by Title VII] because they are not considered employees."). Similarly, Chapter 21 of the Texas Labor Code "does not apply to an employer with respect to employment of a person outside [Texas]." Tex. Lab. Code § 21.111.

Noel worked in Nigeria from January 2013 to June 2014. Ex. A, Pl. Dep. at 41:7–19. During that time, Noel lived in Nigeria, carried out her job duties in Nigeria, and reported to a supervisor in Nigeria. Ex. F, Snider Decl., ¶ 15. Noel did not obtain U.S. citizenship until April

2016—almost two years after her assignment in Nigeria ended. Ex. A, Pl. Dep. at 26:18–27:4. Thus, allegations stemming from events Noel claimed occurred in Nigeria are not actionable under Title VII because Noel was a non-U.S. citizen working extraterritorially during that time. Likewise, these allegations are not actionable under Chapter 21 of the Texas Labor Code because Noel was working outside Texas.

The majority of Noel's live pleading addresses allegations related to the eighteen months she worked in Nigeria in 2013 and 2014. *See* Ex. A, Pl. Dep. at 44:8–52:14, 110:12–24 (admitting that the allegations in Paragraphs 19–61 and part of Paragraph 62 of her live pleading relate to when she was working in Nigeria); *see also* Pl.'s 1st Am. Compl. [ECF Doc. No. 19] at 3–8. These allegations include the following:   (1) difference in treatment Noel experienced because of her gender, *see id.* ¶ 20; (2) the negative impact this difference in treatment caused on Noel's work activities and her perceived performance, *see id.* ¶ 25; (3) comments that Noel was "unladylike" or that she acted like an "alpha male" or "mother hen," *see id.* ¶¶ 32–34; (4) Noel's complaint of gender discrimination and her participation in an investigation of her claims of "bullying and gender bias" in the workplace, *see id.* ¶ 35; (5) Noel's 2013 performance appraisal, *see id.* ¶ 38; (6) Noel's 2013 relative performance ranking, *see id.* ¶ 39; (7) bullying or belittling by her peers and others in retaliation for her complaints, *see id.* ¶ 58; and (8) Noel's transfer back to Houston, *see id.* ¶ 59. Because neither Title VII nor Chapter 21 provides a viable cause of action for Noel regarding these allegations, Defendants are entitled to summary judgment as a matter of law with respect to Noel's claims arising from her employment in Nigeria.

**B.**      **Alternatively, Noel's claims arising out of her employment in Nigeria fail as a matter of law because they are barred by the applicable statutes of limitations.**

A plaintiff may bring a claim of discrimination or retaliation under Title VII only if she has filed a claim with the EEOC within 300 days of the alleged unlawful act. 42 U.S.C. § 2000e-

5(e)(1).[12] This 300-day limitations period begins on the date the plaintiff learns of the allegedly unlawful employment action, and a plaintiff cannot sustain a claim based on incidents occurring before this 300-day period. *See Vadi v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000).

Even if Title VII or Chapter 21 of Labor Code[13] applied to Noel's claims arising out of her employment in Nigeria, those claims would still fail as a matter of law because Noel waited until February 26, 2015, to file with the EEOC. *See* Ex. A, Pl. Dep. at 42:16–43:1 and Dep. Ex. 3. Since Noel waited until this date, only those employment actions occurring after May 2, 2014, (i.e., within 300 days of the date she filed her charge) can serve as the basis of her claims.

Noel learned that her assignment in Nigeria would end and that she would be transferred back to Houston on March 21, 2014—342 days before she filed her charge with the EEOC. Ex. A, Pl. Dep., at 91:9–14, 189:7–13. Thus, the entire duration of her assignment[14] in Nigeria, as well as the decision to repatriate her, fall outside the bounds of Title VII's 300-day limitations period. As such, the claims Noel raises that are based on her employment in Nigeria are time-barred. Thus, Defendants are entitled to summary judgment as a matter of law with respect to Noel's claims arising from her employment in Nigeria.

**C.     Noel's claim of sex discrimination fails as a matter of law.**

After culling Noel's claims that are not covered by Title VII or Chapter 21, or alternatively those that are barred by the applicable statutes of limitations, the only claims that remain relate to Noel's employment in Houston during the second half of 2014 and the

---

[12] Though Title VII has a default statute of limitations of 180 days, this time period is extended to 300 days for states, like Texas, that provide an administrative mechanism to address complaints of employment discrimination. *See Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1)).

[13] Chapter 21 has a shorter limitations period than Title VII. *See* Tex. Lab. Code § 21.202(a) (noting a 180-day limitations period). All of the alleged adverse employment actions Noel complains of regarding her employment in Nigeria occurred prior to Title VII's longer statute of limitations. Thus, claims arising from those alleged actions are time-barred under both statutes.

[14] Noel does not allege any actionable adverse employment action during her assignment in Nigeria that occurred after she learned on March 21, 2014, that her assignment was ending.

beginning of 2015. With respect to these claims, Noel cannot meet the burden the law[15] imposes on her, making summary judgment appropriate.

There is no direct evidence of discrimination. Therefore, the familiar burden shifting-framework applies to Noel's claim of sex discrimination. *See Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007). Under this rubric, the employee must first establish a prima facie case of discrimination. *See id.* If the employee can do so, the burden of production (not persuasion) shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See id.* Once the employer meets this burden, the burden shifts back to the employee. *See id.* It is at this third stage in the burden shifting framework that Chapter 21 of the Texas Labor Code differs substantially from the customary Title VII rubric. The Texas Supreme Court requires a plaintiff to satisfy a "pretext plus" standard at this third stage—meaning, the employee must show *both* that the employer's proffered reason is false *and* that discrimination was the real reason for the employer's actions. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003). A plaintiff can also meet this ultimate burden (under either statute) by showing that, even if the employer's proffered reason was true, another motivating factor was the employee's sex. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005). At all times, however, the plaintiff holds the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 101 S. Ct. 1089, 1093–94 (1981).

Noel does not have the proof necessary to establish a prima facie case of sex discrimination. Alternatively, even if Noel could satisfy her initial burden, SIEP has legitimate,

---

[15] Chapter 21 of the Texas Labor Code is substantively identical to Title VII with added protections against discrimination based on age and disability. *See Quantam Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); Tex. Lab. Code § 21.051. As one of its express purposes, Chapter 21 seeks to "provide for the execution of the policies of Title VII . . . ." *See* Tex. Lab. Code § 21.001(1). Accordingly, in cases alleging violations of Chapter 21, Texas courts are guided by analogous federal statutes and cases interpreting them. *See Quantam Chem.*, 47 S.W.3d at 476. Thus, the Title VII cases cited herein apply equally to Noel's state law claims unless otherwise noted.

nondiscriminatory reasons for the actions at issue. Furthermore, Noel has no evidence to satisfy the "pretext plus" standard—that SIEP's reason is false *and* a pretext for discrimination. Likewise, Noel has no evidence that sex discrimination was motivating factor in SIEP's actions. Thus, Defendants are entitled to summary judgment on Noel's sex discrimination claim.

1.      **Noel cannot establish a prima facie case of sex discrimination.**

To establish a prima facie case of sex discrimination, Noel must prove that she was:  (1) a member of a protected class; (2) qualified for her position; (3) subjected to an adverse employment action; *and* (4) replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated male employees were treated more favorably. *Nasti*, 492 F.3d at 593.

Though Noel can establish that she is a member of a protected class, her success at the prima facie stage ends there. As an initial matter, the only employment decision Noel complains of that rises to the level of an adverse employment decision is the termination of her employment. Thus, the third prong of the prima facie analysis limits Noel's claims to that action alone. In addition, Noel cannot meet the second and fourth prongs of the prima facie case. First, Noel cannot show that she was qualified for the Global SURF Lead position because she lacked the basic core competence required by the position. Second, with respect the termination of her employment, Noel brings forth no evidence regarding similarly situated male employees and she cannot show that she was replaced by anyone—let alone an individual outside her protected class—because her job was eliminated. As Noel cannot meet the initial burden imposed by the prima facie analysis, summary judgment is proper.

a.      **Many of Noel's complaints cannot support a sex discrimination claim because they do not rise to the level of an adverse employment action.**

In the discrimination context (as opposed to retaliation), an actionable "adverse employment action" means an *ultimate* employment decision, such as hiring, granting leave,

discharging, promoting, and compensating. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559–60 (5th Cir. 2007). Adverse employment actions "do not include events . . . which *might* jeopardize employment in the future." *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2004, no pet.). (emphasis in original) (internal quotation marks omitted). This is so because the purpose of Title VII—and thus, by legislative mandate, Chapter 21—is not to address "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995), *overruled on other grounds*, *Drake v. Nicholson*, 324 F. App'x 328 (5th Cir. 2009). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Martin v. Kroger Co.*, 65 F. Supp. 2d 516, 535 (S.D. Tex. 1999) (internal quotation marks omitted).

Thus, Noel's complaints related to her 2014 performance appraisal, her 2014 relative performance ranking, and not being interviewed for the Delivery Manager position are not the type of employment decisions that can support a discrimination claim under Title VII or Chapter 21 of the Texas Labor Code. *See, e.g.*, *Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271, 2008 WL 5220569, at *5, 7 (N.D. Tex. Dec. 12, 2008) (negative performance evaluations not adverse employment actions); *Martin*, 65 F. Supp. 2d at 536 ("[N]egative performance evaluations, even if undeserved, are not adverse employment actions giving rise to actionable discrimination claims."); *Dollis*, 77 F.3d at 779–82 (refusal to consider for promotion and criticism of work not adverse employment actions). As such, to the extent Noel's sex discrimination claim is premised on any of these employment decisions that fail to rise to the level of an *actionable* adverse employment action, it must be dismissed.

**b.      Noel cannot meet the second element of her prima facie case.**

Noel concedes that the ability to effectively communicate and work with others was a key requirement in her role as Global SURF Lead. Ex. A, Pl. Dep., at 220:18–221:7. In fact she

concedes that these skills were required in almost *every* role in the organization and that they were part of basic, core competence. *Id.* However, Mr. Venkataraman, Noel's supervisor upon her return to Houston, noted that Noel lacked this core competence. Ex.A, Pl. Dep., at 218:6–220:25 and Dep. Ex. 21. Mr. Venkataraman was one in a long string of supervisors at SIEP who observed that Noel lacked these critical skills. *See generally* Ex. B, Snider Dep., at Dep. Ex. 12. As Noel lacked the core competence required by the Global SURF Lead job—and practically *every* job at SIEP —Noel cannot show that she was qualified for that position.

### c.      Noel cannot establish the fourth element of her prima facie case.

Regarding the elimination of her position and the subsequent termination of her employment, Noel cannot establish that male employees similarly situated to herself were treated more favorably. "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005); *see also E.E.O.C. v. Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d 678, 702 (N.D. Tex. 2007) (noting that to compare employees the employees must have "nearly identical" circumstances). Noel has not identified *any* male employees she claims were treated more favorably than her—let alone *similarly situated* male employees who received such treatment. Thus, she has failed to meet the fourth element of her prima facie case.

At the prima facie stage, when the adverse employment action at issue is an employee's termination, Title VII and Chapter 21 permit a plaintiff to meet the fourth element by showing that she was replaced by an individual outside her protected class. Here, however, this alternative is unavailing. It is undisputed that Noel was not replaced by anyone as her position was eliminated. Ex. E, Moore Dep., at 40:14–43.24. The negligible duties that remained from the Global SURF Lead position were absorbed by the SURF team and ultimately disappeared. Ex. B, Snider Dep., at 56:15–57:1, 107:25–108:4 and Dep. Ex. 5; Ex. E, Moore Dep., at 40:14–43.24.

---

Because Noel can satisfy neither the second nor the fourth prong of her prima facie case, she cannot meet the initial burden imposed on her in her claim for sex discrimination. Thus, Defendants are entitled to summary judgment.

**2.      SIEP has articulated a legitimate, nondiscriminatory reason for the elimination of Noel's job and the termination of her employment.**

Even if Noel could somehow establish a prima facie case of sex discrimination, SIEP has legitimate, nondiscriminatory reasons for the decision to eliminate the Global SURF Lead role and the subsequent termination of Noel's employment. First, as to the job elimination, the declining economic environment in the oil industry in late 2014 and early 2015 resulted in a significant reduction of the workload activity in the Nigeria and Malaysian portfolios, which directly impacted Noel's role. Ex. F, Snider Decl., ¶ 26; Ex. G, Peart Decl, ¶ 13. Noel herself recognized in late 2014 that her role was "not viable." Ex. A, Pl. Dep., at 134:13–137:10 and Dep. Ex. 9; *see also id.* at 128:20–130:23, 132:12–133:3 and Dep. Ex. 7; Ex. B, Snider Dep., at 56:15–57:1.

Second, as to the subsequent termination of Noel's employment, SIEP gave Noel over two months to apply for a new role within the company after her job was eliminated, while also encouraging her to expand her job search to external opportunities. Ex. F, Snider Decl., ¶ 29. However, Noel did not secure a new role. *Id.* Because Noel failed to find a new role within the company, SIEP terminated her employment. *Id.*

**3.      Noel cannot meet the ultimate causation standard in her sex discrimination claim.**

Noel can survive summary judgment only by demonstrating through admissible evidence either (1) that SIEP's articulated reason is false *and* the real reason for her termination was discrimination—the "pretext plus" standard required by Chapter 21; or (2) that while SIEP's

articulated reason is true, discrimination was a factor which motivated the decision to terminate her employment. Noel cannot satisfy either causation standard.

Noel makes very little effort to link the termination of her employment to her gender. She merely claims that the facts SIEP relied on in terminating her employment "have no basis in fact," while in the same breath admitting that she does not know what those facts were. *See* Ex. A, Pl. Dep., at 56:2–25, 58:19–60:22. She cannot point to any actionable comments based on her gender.[16] She brings forth no male comparators. She cannot rebut the reasons SIEP offers for the employment decisions at issue. In sum, Noel lacks evidence of *any* of the hallmarks a plaintiff needs to overcome summary judgment. *See Rubinstein v. Admin'rs. of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000) ("[D]iscrimination suits still require evidence of discrimination.").

At most, Noel's allegations amount to a disagreement with SIEP regarding its business judgment. However, a plaintiff's "subjective opinion or disagreement with a business decision" of her employer is not sufficient to establish unlawful discrimination. *Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d at 703. Moreover, "[e]mployment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions, nor to transform the courts into personnel managers." *See Bryant v. Compass Grp. USA, Inc*., 413 F.3d 471, 478 (5th Cir. 2005) (internal quotation marks omitted).

If a plaintiff creates only a weak inference that the employer's reason for its adverse action was untrue, and if there is abundant and uncontroverted independent evidence that no discrimination occurred, the employer is entitled to judgment as a matter of law. *See Reeves v. Sanderson Plumbing Prods., Inc*., 120 S. Ct. 2097, 2109 (2000). Without any supporting evidence or even personal knowledge regarding the decision-making process, Noel claims that

---

[16] The only comments Noel complain of occurred during her employment in Nigeria. *See* ¶ 39, *supra*, at 9. Thus, they are not actionable. *See supra* at 11–13.

her employment should not have been terminated. However, Noel's disagreement with the company's decisions fails, as a matter of law, to create any inference that SIEP's reasons for eliminating the Global SURF Lead role and the resulting termination of her employment were untrue, particularly given SIEP's "abundant and uncontroverted independent evidence that no discrimination occurred" and Noel's own admissions that her job position was no longer "viable." *See Reeves*, 120 S. Ct. at 2109; *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (reasoning that an employee's subjective belief that she suffered an adverse action as a result of discrimination, by itself, is insufficient to withstand summary judgment in light of evidence establishing an adequate nondiscriminatory reason); *Winters*, 132 S.W.3d at 576 ("[A]n employee's own subjective belief of discrimination, no matter how genuine, cannot serve as the basis for judicial relief."); *see also* Ex. A, Pl. Dep., at 128:20–130:23, 132:12–133:3, 134:13–137:10 and Dep. Exs. 7, 9. Fifth Circuit case law offers a clear warning for litigants in Noel's shoes—"conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). However, Noel has failed to heed this warning, bringing forth no specific evidence that her gender played any role at all in the employment decisions at issue. Thus, since Noel has created no inference related to pretext and can present no evidence that her sex was a motivating factor in the employment decisions at issue, Defendants are entitled to judgment as a matter of law.

**D.**      **Noel's claim of retaliation fails as a matter of law.**

To prevail on her retaliation claim, Noel must establish a prima facie case by showing that: (1) she engaged in protected activity; (2) she suffered an adverse employment action[17]; and

---

[17] A difference standard for adverse employment actions applies in n the *retaliation* context. *See Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006) (declaring the standard for adverse employment actions in the *retaliation* context to be an action that an reasonable employee would have found to be materially adverse and

(3) a causal link existed between her protected activity and the adverse employment action. *Pineda v. Utd. Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). The burden then shifts to SIEP to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* Once SIEP does so, Noel must prove that SIEP's stated reason is merely a pretext for the real, discriminatory purpose (i.e. retaliation). *Id.* Noel has the ultimate burden to show that she would not have suffered the adverse employment action "but for" her protected activity. *Id.*

Noel's retaliation claim fails at the prima facie stage because she did not engage in any protected activity until *after* she learned that her job had been eliminated. Thus, any alleged adverse employment action prior to that point could not have been retaliatory because no protected activity had occurred. In addition, with respect to the termination of her employment, Noel cannot meet the third element of her prima facie case. Alternatively, even if Noel could satisfy her initial burden, SIEP has legitimate, nondiscriminatory reasons for the employment decisions at issue. Finally, Noel cannot meet her ultimate burden of establishing that retaliation was the "but for" cause of an alleged adverse employment action. Thus, Defendants are entitled to summary judgment on Noel's retaliation claim.

### 1. Noel did not engage in protected activity until *after* SIEP informed her of the elimination of her job.

Noel bases much of her retaliation claim on the complaint of "bullying and gender bias" she made in Nigeria in 2014. However, this complaint does not constitute protected activity. Under Title VII's anti-retaliation provision, an employer is prohibited from retaliating against an employee because that *employee* opposed a practice made an unlawful employment practice *under Title VII*. *See* 42 U.S.C. § 2000e-3. However, when Noel worked in Nigeria in 2014 she was not an "employee" under Title VII's definition of the term. *See Shekoyan*, 409 F.3d at 421;

---

which "might well have dissuaded a reasonable work from [engaging in protected activity]").

*see also Iwata*, 59 F. Supp. 2d at 603–04 (noting that non-citizens working outside the United States are "not considered employees" under Title VII). In addition, Noel's complaint of "gender bias and bullying" in Nigeria cannot be considered opposition to a practice made unlawful by Title VII—as required by the statute—because the statute does not extend to employment actions against non-U.S. citizens working extraterritorially.[18] *See* 42 U.S.C. § 2000e-1(a); *see also Mota*, 261 F.3d at 524 n.34. Thus, this complaint does not constitute protected activity that can support Noel's retaliation claim.

Besides the complaint in Nigeria, Noel claims she made a complaint of discrimination or retaliation in December 2014. *See* note 10, *supra*. However, Noel cannot provide any evidence that she engaged in protected activity at that time. Rather, the evidence shows that Noel sent an email to Mr. Peart on December 31, 2014, complaining of a number of issues—but *not* of discrimination or retaliation. Ex. B, Snider Dep., at Dep. Ex. 2; Ex. G, Peart Decl, ¶¶ 17–18. General complaints of this nature do not amount to protected activity. *See, e.g.*, *Hough v. Tex. Dep't of State Health Servs.—Meat Safety Assur. Unit*, No. H-10-2206, 2012 WL 3756536, at *2 (S.D. Tex. Aug. 28, 2012). Thus, this December 2014 complaint does not satisfy the predicate required for a claim of retaliation. To establish her retaliation claim, Noel can only rely on the complaint she made in mid-February 2015 and the EEOC charge she filed later that month—both of which occurred *after* Noel learned of her job elimination. Ex. B, Snider Dep., at 86:23–88:9; Ex. A, Pl. Dep., at 41:20–43:9 and Dep. Ex. 3

### 2.    Noel cannot establish the third element of her prima facie case of retaliation.

The only adverse employment action[19] Noel suffered after she engaged in protected

---

[18] Similarly, Chapter 21's anti-retaliation provision applies when a person opposes a discriminatory practice *under* Chapter 21. *See* Tex. Lab. Code § 21.055. Because Chapter 21 does not extend to Noel's employment in Nigeria, Tex. Lab. Code § 21.111,  neither Title VII and Chapter 21 make any employment actions Noel experienced there unlawful.

[19] Noel complains that her 2014 performance appraisal and relative performance ranking were retaliatory. *See* Pl.'s

activity is the termination of her employment. Thus, to make out a prima facie case of retaliation, Noel must establish a causal link between the protected activity she engaged in in February 2015 and the termination of her employment. Noel cannot meet this burden.

At the time Mr. Peart informed Noel of her job elimination—prior to any protected activity—Mr. Peart urged Noel to look for a new role external to the company. Ex. G, Peart Decl, ¶ 16. Due to Noel's long history of behavioral problems, Mr. Peart expected it would be difficult for Noel to secure a new role inside the company. *Id.* Moreover, Noel failed to obtain a new role. Ex. F, Snider Decl., ¶ 29. Thus, the eventual termination of Noel's employment with SIEP resulted directly from the elimination of her job—which occurred prior to any protected activity—and her own failure to secure a new position at SIEP. Put simply, Noel cannot present any evidence of a causal link between her protected activity and her termination.

### 3.   SIEP has articulated a legitimate, nondiscriminatory reason for the termination of Noel's employment.

Even if Noel could establish a prima facie case of retaliation, SIEP has a legitimate, nondiscriminatory reason ending Noel's employment. The Global SURF Lead role lacked viability due to the economic conditions in the oil industry in late 2014 and early 2015. Ex. F, Snider Decl., ¶ 26; Ex. G, Peart Decl, ¶ 13. Noel cannot dispute that. Ex. A, Pl. Dep., at 134:13–137:10 and Dep. Ex. 9; *see also id.* at 128:20–130:23, 132:12–133:3 and Dep. Ex. 7; Ex. B, Snider Dep., at 56:15–57:1. Thus, the role was eliminated. Ex. F, Snider Decl., ¶ 26; Ex. G, Peart Decl, ¶ 13. After the elimination of the Global SURF Lead role, Noel needed to secure a new role in order to continue her employment with the company. *See* Ex. F, Snider Decl., ¶ 29. Though SIEP provided Noel several weeks to locate a new role, Noel did not secure one. *Id.*

---

1st Am. Compl. [ECF Doc. No. 19] at 68–75. However, even if these events amount to actionable adverse employment actions, they occurred *prior* to Noel's engagement in any protected activity that could support her retaliation claim. Ex. A, Pl. Dep., at 87:17–21; *see also* Ex. F, Snider Decl., at Ex. F7.

Thus, on April 30, 2015, her employment ended. *Id.*

  **4.**  **Noel cannot satisfy her ultimate causation burden.**

  Because SIEP has articulated a legitimate, nondiscriminatory reason for the termination of Noel's employment, Noel bears the burden to present evidence that the proffered reason is a pretext for retaliation and that *but for* her protected activity Noel's employment would not have ended. *See Pineda*, 360 F.3d at 487, 488. Noel simply cannot satisfy this burden.

  Once again, Noel freely admits that she has no knowledge of what facts SIEP relied on in terminating her employment. *See* Ex. A, Pl. Dep., at 56:2–25, 58:19–60:22. It appears that Noel's retaliation claims boils down to this—the termination of her employment occurred after her February complaints. However, evidence of temporal proximity between a protected act and an adverse employment action, standing alone, is insufficient to prove "but for" causation. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (noting that "very close" temporal proximity can be sufficient to establish causal link for a plaintiff's *prima facie case* but is *never* sufficient to establish "but for" causation). Moreover, during the February 16th meeting regarding the elimination of her job—a meeting that occurred *prior* to her engagement in any protected activity—Noel claims that Mr. Peart informed her that "no other department would consider hiring" her because of her low performance ranks. *See* Ex. A, Pl. Dep., at 156:15–24. Thus, by Noel's own argument, the event that is the "but for" cause of her eventual termination of her employment is the decision to eliminate the Global SURF Lead role—a decision made *before* any protected activity occurred. Ex. G, Peart Decl., ¶ 15. Because Noel cannot satisfy her ultimate burden to show that her employment would not have ended but for her protected activity, her retaliation claim fails. Thus, Defendants are entitled to summary judgment.

**E.**     **Noel's claims against Defendant Shell Oil Company fail as a matter of law because it was not her employer.**

For all of the foregoing reasons, Noel's claims against Defendant Shell Oil Company fail. However, there is an additional, fundamental flaw that dooms Noel's claims against Shell Oil Company—it was not her employer. Liability under Title VII "attaches *only* to a plaintiff's 'employer.'" *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 450 (5th Cir. 1994), *abrogated on other grounds by Oncale v. Sundowner Offshore Servs., Inc.*, 118 S. Ct. 998 (1998). Chapter 21 of the Texas Labor Code carries a similar requirement. *See* Tex. Lab. Code §§ 21.051, .055. It is undisputed that Noel never worked for Shell Oil Company. *See* Ex. F, Snider Decl., ¶ 8. Thus, Noel has no evidence to support a threshold finding that Shell Oil Company was her employer and, thus, could be held liable under Title VII or Chapter 21. As such, summary judgment is proper on all of Noel's claims against Defendant Shell Oil Company.

## CONCLUSION

For all of the foregoing reasons, Defendants Shell Oil Company and Shell International Exploration & Production Inc., request that the Court:

1.     Grant summary judgment in their favor;

2.     Dismiss Plaintiff's claims in their entirety with prejudice; and

3.     Grant them such other and further relief to which they may be entitled.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of February, 2017, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Terah Moxley
Lori M. Carr / Terah Moxley