# EXHIBIT A

2017 WL 1018340
United States Court of Appeals,
Fifth Circuit.

Ammar ALKHAWALDEH, Plaintiff–Appellant
v.
DOW CHEMICAL COMPANY, Defendant–Appellee

No. 16-20069
|
FILED March 15, 2017

**Synopsis**
**Background:** Employee of Arab descent who worked as a scientist at chemical company filed suit against his employer alleging racial discrimination and retaliation, in violation of Title VII. The United States District Court for the Southern District of Texas, Lynn N. Hughes, J., granted employer summary judgment. Scientist appealed.

**Holdings:** The Court of Appeals, W. Eugene Davis, Circuit Judge, held that:

[1] there was no evidence of others similarly situated to employee, as required to support Title VII discrimination claim;

[2] negative performance evaluation was not an "adverse employment action" under Title VII; and

[3] employee was not terminated because of protected activity of filing claims of discrimination and harassment.

Affirmed.

West Headnotes (19)

[1]   **Civil Rights**  ⚷  Evidence, hearing, and determination

While court must consider evidence of an Equal Employment Opportunity Commission (EEOC) investigative report on motion for summary judgment on claim for retaliation, in violation of Title VII, it is free to ignore EEOC letters of determination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed. R. Civ. P. 56(a).

Cases that cite this headnote

[2]  Federal Courts ⚬ Summary judgment
     Federal Courts ⚬ Summary judgment

Court of Appeals reviews district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in a light most favorable to the non-moving party. Fed. R. Civ. P. 56(a).

Cases that cite this headnote

[3]  Federal Courts ⚬ Grounds for sustaining decision not relied upon or considered

Court of Appeals may affirm a grant of summary judgment on any legal ground raised below, even if it was not the basis for district court's decision. Fed. R. Civ. P. 56(a).

Cases that cite this headnote

[4]  Federal Civil Procedure ⚬ Weight and sufficiency

When burden at trial rests on a non-movant, movant seeking summary judgment must merely demonstrate an absence of evidentiary support in the record for the non-movant's case. Fed. R. Civ. P. 56(a).

Cases that cite this headnote

[5]  Civil Rights ⚬ Practices prohibited or required in general;elements

Pursuant to *McDonnell Douglas* framework used to evaluate Title VII claims for discrimination, initial burden to establish prima facie case rests with employee to produce evidence that he: (1) is a member of a protected class; (2) was qualified for the position that he held; (3) was subject to an adverse employment action; and (4) was treated less favorably than others similarly situated outside of his protected class. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

1 Cases that cite this headnote

[6] Civil Rights  Effect of prima facie case;shifting burden

Under *McDonnell Douglas* framework used to evaluate Title VII claims for discrimination, once employee has established a prima facie case, burden shifts to employer to articulate a legitimate, non-discriminatory reason for adverse employment action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[7] Civil Rights  Effect of prima facie case;shifting burden

Under *McDonnell Douglas* framework used to evaluate Title VII claims for discrimination, if employer is able to articulate a legitimate, non-discriminatory reason for adverse employment action, burden shifts back to employee to demonstrate that employer's proffered reason is a pretext for discrimination. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[8] Civil Rights  Disparate treatment

The "similarly situated" prong for establishing a prima facie case of discrimination under Title VII requires plaintiff to identify at least one coworker outside of his protected class who was treated more favorably under nearly identical circumstances; this coworker, known as a comparator, must hold same job or hold same job responsibilities as plaintiff, must share same supervisor or have his employment status determined by same person, and must have a history of violations or infringement similar to that of plaintiff. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

1 Cases that cite this headnote

[9] Civil Rights  Disparate treatment

A comparator need not be identical to plaintiff to be "similarly situated," for purposes of claim for discrimination, in violation of Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[10] Civil Rights  Purpose and construction in general

Title VII was enacted to prohibit discrimination on the basis of race, gender, and other legislatively enumerated grounds; it was not enacted to promote general fairness in the workplace, or to protect against the indiscriminate firing of employees. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[11] Civil Rights  Disparate treatment

There was no evidence that scientist at chemical company, who identified himself as a Muslim Jordanian Arab, was treated less favorably than others similarly situated outside his protected class, as required to support his claim against employer for racial discrimination, in violation of Title VII; scientist had been given lowest possible performance rating, he was placed on a performance improvement plan (PIP), he was prohibited from transferring to another department, and ultimately he was terminated for poor performance, unlike any others outside his protected class. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

1 Cases that cite this headnote

[12] Civil Rights  Practices prohibited or required in general;elements

An employee establishes a prima facie case of retaliation under Title VII by showing (1) that he participated in an activity protected by Title VII, (2) that his employer took an adverse employment action against him, and (3) that there is a causal connection between the adverse employment action and the protected activity. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[13] Civil Rights  Retaliation claims

Once employee establishes prima facie case of retaliation under Title VII, burden shifts to employer to articulate a legitimate non-retaliatory reason for adverse employment action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[14] Civil Rights  Retaliation claims

If employer articulates a legitimate, non-retaliatory reason for adverse employment action on claim for retaliation, in violation of Title VII, burden shifts back to employee to demonstrate that employer's stated reason is actually a pretext for retaliation. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[15]   Civil Rights ⚷ Causal connection;temporal proximity

   Federal Civil Procedure ⚷ Employees and Employment Discrimination, Actions Involving

   In order to demonstrate pretext sufficient to defeat a motion for summary judgment on claim for retaliation, in violation of Title VII, an employee must produce evidence that could lead a reasonable fact-finder to conclude that the adverse employment action would not have occurred but for employee's decision to engage in an activity protected by Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

   Cases that cite this headnote

[16]   Civil Rights ⚷ Particular cases

   Negative performance evaluation, in which scientist of Arab descent was given lowest possible score on performance, was not an "adverse employment action" actionable under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

   Cases that cite this headnote

[17]   Civil Rights ⚷ Causal connection;temporal proximity

   An employee alleging retaliation, in violation of Title VII, cannot, with each protected activity, re-start the temporal-proximity clock to show causal connection between adverse employment action and protected activity. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

   Cases that cite this headnote

[18]   Civil Rights ⚷ Discharge or layoff

   Employee of Arab descent was not terminated from his position as scientist with chemical company because of his protected activity of filing reports of racial harassment and discrimination with company's human resources department, or

because of complaints of racial discrimination he filed with Equal Employment Opportunity Commission (EEOC), as would violate Title VII, but rather because of his poor job performance and lack of basic skills; employee received lowest possible rating on his performance a month before he filed first report of discrimination, and although he claimed his supervisor had racist agenda, it was supervisor who, just months earlier, helped him successfully appeal an Immigration and Naturalization Service's (INS) denial of his visa, which effectively ensured that employee was allowed to remain in the United States. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

[19] Civil Rights ⚖ Adverse actions in general

Poor job performance is not a "protected activity" under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Cases that cite this headnote

Appeals from the United States District Court for the Southern District of Texas, Lynn N. Hughes, U.S. District Judge

**Attorneys and Law Firms**

Joseph Y. Ahmad, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing, P.C., Houston, TX, for Plaintiff–Appellant.

Michael Lamar Brem, Esq., Schirrmeister Diaz–Arrastia Brem, L.L.P., Houston, TX, for Defendant–Appellee.

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

**Opinion**

W. EUGENE DAVIS, Circuit Judge:

*1 This is a Title VII case that the district court dismissed on summary judgment. For the reasons set out below, we AFFIRM.

# I.

In January 2008, Appellee, Dow Chemical Company ("Dow"), hired Appellant, Ammar Alkhawaldeh, to serve as a Functional Scientist/Functional Leader ("FS/FL") in Dow's Epoxy Research and Development Group. As Ammar's direct supervisor, Dr. Bruce Hook was responsible for annually evaluating Ammar's performance.

In October 2009, Hook rated Ammar a 1—the lowest possible rating on Dow's 1–5 scale. Hook also placed Ammar on a Performance Improvement Plan ("PIP") in order to determine whether Ammar's performance was capable of rehabilitation.

Ammar vigorously protested his rating to no avail. On April 2, 2010, Ammar filed his first EEOC charge, alleging discrimination in violation of Title VII, 42 U.S.C. § 2000(e) *et seq.* On November 17, 2010, Ammar filed the now-controlling EEOC charge, alleging discrimination *and* retaliation in violation of Title VII.

> In November 2009, I reported to human resources that a trainer made offensive remarks to me because I am of Arab descent, dark skinned and/or from Jordan, and that he failed to accommodate my dietary restrictions. When my manger, Bruce Hooks, heard that I complained to human resources, he became angry, made offensive remarks to me and later told another employee that he (Mr. Hooks) wanted me to leave Dow. I was subjected to retaliation in multiple forms for engaging in protected conduct, including but not limited to placing me on a "performance improvement plan" when it was not merited. Company management also blocked me from transferring to another position with the company that would not require me to work for the managers I complained about. I successfully completed the performance improvement plan, but I was still not permitted to transfer to another position within the company; I was terminated by the company without justification, with effect October 31, 2010.

[1] After exhausting all administrative remedies,[1] Ammar sued Dow alleging discrimination and retaliation in violation of Title VII. Dow subsequently filed a motion for summary judgment, which the district court granted on December 31, 2015. We have jurisdiction to decide this appeal pursuant to 28 U.S.C. § 1291.

1   The Equal Employment Opportunity Commission ("EEOC") ultimately issued a Letter of Determination finding that Dow retaliated against Ammar in violation of Title VII. The district court's decision not to address this letter in its ruling was not

in error. *See* *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 725 (5th Cir. 2002) (distinguishing an EEOC investigative report, which the district court must consider, from an EEOC letter, which the district court is free to ignore).

## II.

[2] [3] [4] We review a district court's grant of summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party.[2] Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "On appeal we may affirm a grant of summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision."[4] Where, as here, "the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."[5]

[2] *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016).

[3] Fed. R. Civ. P. 56(a).

[4] *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir.2003)).

[5] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

## III.

### A.

*2 [5] [6] [7] Ammar's Title VII claim relies entirely on circumstantial evidence, and is therefore subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pursuant to this framework, the initial burden rests with the employee to produce evidence that he: (1) is a member of a protected class, (2) was qualified for the position that he held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of his protected class.[6] This constitutes the employee's prima facie case. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.[7] If the employer is able to articulate a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the employee to "demonstrate that the" employer's proffered reason is a "pretext for discrimination."[8]

6      *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

7      *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).

8      *Ibid.*

Ammar has failed to produce any evidence that he was treated less favorably than others "similarly situated" outside of his protected class. Therefore, his Title VII discrimination claim fails as a matter of law.

[8]   The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." [9]   This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[ ] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant.

9      *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

[9]   Ammar identifies himself as a Muslim Jordanian Arab FS/FL in Dow's Epoxy Research and Development Group. Therefore, in order for Ammar to satisfy the "similarly situated" prong, he must identify at least one non-Muslim Jordanian Arab FS/FL in Dow's Epoxy Research and Development Group who received a 1 rating, as he did, and who completed a PIP, as he did, but who was not fired, as he was. [10]

10     Lest there be any doubt, the Title VII comparator must be similarly situated—not identical.

[10]   [11]   Ammar has failed to identify a single non-Jordanian Muslim Arab FS/FL in Dow's Epoxy Research and Development Group. This alone justifies dismissal of his Title VII claim. It is well-established that a Title VII claimant can only prove disparate treatment by presenting evidence that he was treated less favorably than others *outside of his protected class*. [11]   "Title VII was enacted to prohibit discrimination on the basis of race, gender, and other legislatively enumerated grounds." [12]   It was not enacted to promote "general fairness in the workplace, or ... to protect against" the indiscriminate firing of employees. [13]

11     *See Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 409 (5th Cir. 2016).

12     *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 262 (4th Cir. 2008).

13     *Ibid.*

Ammar has also failed to identify a single FS/FL who received a 1 rating, as he did, and who completed a PIP, as he did, but who was not fired, as he was. In fact, Ammar admits that no such comparator exists. He affirmatively states that he was the only Dow employee to

receive a 1 rating in 2009, and he was the only FS/FL to be placed on a PIP throughout his entire tenure at Dow. Ammar therefore cannot prove that he was treated less favorably than others "similarly situated" outside of his protected class.

### B.

[12] [13] [14] [15] Under our Title VII retaliation framework, the initial burden rests with the employee to produce evidence: (1) that he participated in an activity protected by Title VII, (2) that his employer took an adverse employment action against him, and (3) that there is a causal connection between the adverse employment action and the protected activity. [14] This establishes the employee's prima facie case, and gives "rise to an inference of retaliation." [15] The burden then shifts to the employer to articulate a legitimate non-retaliatory reason for the adverse employment action. [16] Once the employer articulates a legitimate, non-retaliatory reason for the adverse employment action, the burden shifts back to the employee to "demonstrate that the employer's [stated] reason is actually a pretext for retaliation." [17] In order to demonstrate pretext sufficient to defeat a motion for summary judgment, an employee must produce evidence that could lead a reasonable fact-finder to conclude that "the adverse [employment] action would not have occurred 'but for' " the employee's decision to engage in an activity protected by Title VII. [18]

14   *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).

15   *Ibid.*

16   *Ibid.*

17   *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007)).

18   *Ibid.* (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, ––U.S. ––––, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013)).

*3 [16] Dow told the EEOC that it fired [19] Ammar because of "his poor performance in 2009 and his failure to complete a Performance Improvement Plan" in 2010. Ammar, however, claims that Dow's stated reason is "inconsistent" with the sworn testimony of numerous Dow employees, who have testified that Ammar did, in fact, complete the PIP in 2010 and that in order to complete the PIP, a Dow employee must be performing at a satisfactory level. Ammar suggests that this alleged inconsistency *necessarily* raises a genuine dispute of material fact as to the issue of pretext. For the following reasons, we disagree.

19   Dow's firing of Ammar is the only "adverse employment action" actionable under Title VII. See *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998) (noting that a negative performance evaluation does not constitute "an adverse employment action actionable under Title VII"); *Cannon v. St. Paul Fire & Marine Ins. Co.*, No. CIV.A.

3:03CV2911-N, 2005 WL 1107372, at *3 (N.D. Tex. May 6, 2005) (holding that placing an "employee in a remedial program" does not constitute an "adverse employment action" actionable under Title VII).

We have held that a court *may* infer pretext where an employer "has provided inconsistent or conflicting explanations for its conduct."[20] We have also, however, held that a court deciding a motion for summary judgment in a Title VII case should consider "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case."[21] The ultimate question is not one of pretext, but whether a reasonable fact-finder could conclude that the employer would not have fired the employee "but for" the employee's decision to engage in an activity protected by Title VII.[22]

---

[20] *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 594 (5th Cir. 2007).

[21] *Price*, 283 F.3d at 720 (internal quotations omitted).

[22] See *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

**[17]** Ammar alleges he engaged in "protected activity" for the first time in November 2009, when he reported to his then-manager, Hook, that two Dow employees made what he interpreted to be racially insensitive remarks at a Dow training session.[23] One allegedly joked, after Ammar won a briefcase in a Dow raffle, that he could fill it with ten million dollars cash, ten kilograms of cocaine, or an assault rifle, which Ammar took to be an insult to his Muslim heritage. The other allegedly chastised Ammar for arriving fifteen minutes late to a post-lunch meeting. When Ammar attempted to explain that he was late because he, unlike his coworkers, had to go out to eat, the Dow employee asserted that it was "not his problem" that Ammar, as a Muslim, could not eat the provided lunch. When Ammar reported these remarks to Hook, Hook threw a piece of paper at him and told him, "Ammar," when you come from the part of the world that you come from, "there's a perception, and perception is reality."

---

[23] Protected activities under Title VII "fall into two distinct categories: participation or opposition." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e–3(a)). We assume without deciding that Ammar's November 2009 conversation with Hook constitutes opposition activity such that it warrants "protection under Title VII." See *id.* at 260 (citing *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures.")). We note, however, that Dow did not terminate Ammar until October 30, 2010, which in and of itself raises serious temporal-proximity concerns. See *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citing circuit case law holding three-and four-month periods to be insufficient); *see also Barkley v. Singing River Elec. Power Ass'n*, 433 Fed.Appx. 254, 260 (5th Cir. 2011) (unpublished) (holding that a "four-month gap in time, standing alone, is insufficient to establish prima facie evidence of causation").

Ammar alleges that he repeatedly engaged in protected activity from November 2009 to June 2010. But a Title VII claimant cannot, with each protected activity, re-start "the temporal-proximity clock." See *Hanks v. Shinseki*, No. 3:08-1594-G, 2010 WL 3000835, at *7 (N.D. Tex. July 28, 2010); *see also Aryain v. Wal–Mart Stores Texas LP*, 534 F.3d 473, 487 (5th Cir. 2008) (noting that "temporal proximity standing alone is insufficient to establish an issue of fact as to pretext").

**\*4** [18] Even assuming the veracity of Ammar's claims, no reasonable fact-finder could conclude that Ammar would not have been fired but for his November 2009 conversation with Hook. Hook gave Ammar the now-contested 1 rating in October 2009—one month *before* Ammar's alleged conversation with Hook took place. It was also Hook who, just months earlier, helped Ammar successfully appeal the Immigration and Naturalization Service's ("INS") denial of his O–1 visa, which effectively ensured that Ammar was allowed to remain in the United States. In an email addressed to Hook at the time, Ammar wrote:

> Bruce,
>
> I am not sure where or how to start but I just want to express my profound gratitude to you for the tremendous support I received from you.... [I] will never forget your support and kindness for the rest of my life. You[r support of me] showed great leadership [and] character[,] but what is more important in my view is the true and genuine person [that] you are.
>
> Thank you so much,
>
> Ammar

All parties, nonetheless, agree that by the summer of 2010, Ammar needed to be transferred out of Hook's group. Ammar had bypassed corporate channels and sent an email to the Chairman and CEO of Dow claiming that he was the victim of retaliation. He believed that everything that Hook did was in furtherance of Hook's "racist agenda." He complained that the PIP deadlines that Hook imposed were unreasonable. He alleged that Hook could not be trusted to impartially preside over his evaluation. And his animus towards Hook was beginning to affect "others on the team."

Accordingly, on July 6, 2010, Dow transferred Ammar to a new group and placed him under the direct supervision of David West. Ammar alleges that at this point, his PIP was complete which, pursuant to corporate policy, meant that Dow considered him to be a satisfactory employee. Dow, on the other hand, asserts that Ammar's PIP was terminated rather than completed as alleged.

We resolve this genuine dispute of material fact in Ammar's favor but find that it makes no difference, primarily because Ammar was not terminated on July 6, 2010. Dow, on that date, merely transferred Ammar to West's group, where West evaluated him for approximately two months before concluding, like Hook, that Ammar was an under-performing employee whose deficiencies were beyond repair.

> [D]uring the [two months that I worked with Ammar], I was looking for, you know, some good evidence that I ... just had incomplete knowledge or only secondhand knowledge or whatever, and I was looking for—I was looking for any signs ... that he was going to be a good fit in my group or that, you know, perhaps he might have some role if not in the process research side, elsewhere in the group, and I didn't find any evidence of that.

Dow ultimately, pursuant to corporate policy, convened a committee to evaluate Ammar's performance. The committee found that:

> On numerous times, Ammar seemed insubordinate.
>
> He tended to spend more time writing letters and not concentrating on his work.
>
> He does not seem to bring the innovative attribute to the job.
>
> During [the] past 12 monthly innovation meetings, the expectation is that FSFL research employees will write at least 2 patent disclosures per year. This means that Ammar should have at least 4 or 5. Today, he has one, while others with his same length of employment have upwards of 8 or more.
>
> He does not seem to posses[s] basic engineering skills.
>
> He does not seem to possess basic mathematical skills for engineers.
>
> Based upon feedback from technical team members and his leaders, his relative performance is tracking towards segment "1" again for 2010.

**\*5** Dow officially terminated Ammar on October 30, 2010.

**[19]** We find that, in light of all of this evidence, no reasonable fact-finder could conclude that Ammar would not have been fired but for his decision to engage in activity protected by Title VII. Poor performance is not an activity protected by Title VII. Even assuming that Ammar completed the PIP, West's negative, post-PIP evaluation independently justifies Ammar's termination. The "but for" standard represents a "high burden" that Ammar cannot meet and has not met.[24]

---

24   See *THI–Hawaii, Inc. v. First Commerce Fin. Corp.*, 627 F.2d 991, 995 (9th Cir. 1980) (quoting *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 279 (9th Cir. 1976)).

## IV.

The judgement of the district court is AFFIRMED.

**All Citations**

--- F.3d ----, 2017 WL 1018340, 129 Fair Empl.Prac.Cas. (BNA) 1765

---

**End of Document**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.