IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CORNELIA NOEL, | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-1087 |
| | § | |
| SHELL OIL COMPANY and | § | |
| SHELL INTERNATIONAL E&P, INC., | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the court[1] is Defendants Shell Oil Company and Shell International Exploration & Production Inc.'s ("SIEP") (collectively "Shell Defendants") Motion for Summary Judgment (Doc. 73). The court has considered the motion, Plaintiff's response, Shell Defendants' reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Shell Defendants' motion for summary judgment be **GRANTED.**

## I. Case Background

Plaintiff filed this employment action against Shell Defendants and a supervisor, Debo Oladunjoye ("Oladunjoye"), alleging discrimination based on her gender and retaliation in violation of Title VII of the Civil Rights Act of 1964[2] ("Title

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 32, Ord. Dated Apr. 26, 2016.

[2] 42 U.S.C §§ 2000e-2000e-17.

VII") and the Texas Commission on Human Rights Act[3] ("TCHRA").
Plaintiff never served Oladujoye.[4]

## A.   Factual Background

Defendant SIEP employed Plaintiff beginning in October 2008
and assigned her the role of Senior Staff Subsea Systems Engineer
in Houston.[5]   She held two other positions with Defendant SIEP
before transferring in 2013 to Lagos, Nigeria, as the Head, Subsea
Hardware Engineering, for Shell Nigeria Exploration & Production
Company ("SNEPCo").[6]   At the time of her transfer to Nigeria,
Plaintiff was not a citizen of the United States.[7]

While working in Nigeria, Plaintiff alleged, Oladunjoye told
her that, because she was female, she needed to be a "calming"
influence on David March ("March"), one of her coworkers.[8]   When
Plaintiff's directives conflicted with March's viewpoints,
Plaintiff said, the team ignored her directives.[9]   On the other

---

[3]      Tex. Lab. Code §§ 21.001-21.556.

[4]      In addition to not serving Oladunjoye, she did not assert any claims
against Oladunjoye in her live pleading.   See Doc. 19, Pl.'s Am. Compl.
Accordingly, Oladunjoye is not a party to this suit, despite being named in the
case caption.

[5]      See Doc. 74-1, Ex. A-4 to Defs.' Mot. for Summ. J., Indiv. Dev. Plan
Report.

[6]      See id.; Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. p.
41; Doc. 74-6, Ex. F to Defs.' Mot. for. Summ. J., Decl. of Alyssa Snider ¶ 11.

[7]      See Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 26-
27.   Plaintiff became a naturalized citizen in April 2016.   See id.

[8]      See id. pp. 35-36.

[9]      See id. p. 46.

hand, Oladunjoye characterized certain behavior demonstrated by Plaintiff as insubordination.[10]

Plaintiff complained to Oladunjoye that she perceived "gender bias and bullying in place."[11] The human resources department ("Human Resources") conducted an investigation into Plaintiff's complaints but uncovered no evidence of gender discrimination or bullying in the Nigerian workplace.[12]

In November 2013, Oladunjoye completed a year-end review of Plaintiff's work performance.[13] Oladunjoye gave Plaintiff what she considered to be a low performance rating.[14] Oladunjoye told Plaintiff, among other things, to take constructive feedback, to deal with others with respect, to "avoid display of superiority and know it all attitudes," and to improve her email communication style.[15] Plaintiff challenged the performance review, prompting Oladunjoye to supplement it with Plaintiff's self-evaluation.[16]

---

[10]   Doc. 74-2, Ex. B-12 to Defs.' Mot. for Summ. J., Discipline Summ. pp. 10-11.

[11]   Id. p. 10.

[12]   See id. p. 11; Doc. 74-6, Ex. F-4 to Defs.' Mot. for Summ. J., ER/IR Grievance Case Rev..

[13]   See Doc. 74-1, Ex. A-22 to Defs.' Mot. for. Summ. J., Pl.'s 2013 Performance Rev.; Doc. 74-6, Ex. F-6 to Defs.' Mot. for Summ. J., Email Commc'ns.

[14]   See Doc. 74-1, Ex. A-22 to Defs.' Mot. for. Summ. J., Pl.'s 2013 Performance Rev.; Doc. 74-6, Ex. F-6 to Defs.' Mot. for Summ. J., Email Commc'ns.

[15]   Doc. 74-2, Ex. B-12 to Defs.' Mot. for Summ. J., Discipline Summ. p. 11.

[16]   See Doc. 74-6, Ex. F-6 to Defs.' Mot. for Summ. J., Email Commc'ns.

Oladunjoye also personally met with Plaintiff to discuss her concerns and subsequently updated his supervisor assessment based on his conversation with Plaintiff.[17]

On March 21, 2014, SNEPCo informed Plaintiff that she would be transferred back to Houston because her working relationships with the other team members "ha[d] deteriorated to the point it [was] having a significant strain on delivery."[18] On July 1, 2014, Plaintiff began her new position in Houston as the Global SURF[19] Projects Lead for Defendant SIEP, where she reported to Gouri Venkataraman ("Venkataraman").[20] Although Plaintiff's role was represented as a global one, Defendant SIEP restricted her to supporting Shell Nigeria, "an entity that clearly ha[d] no interest in working with [her]."[21] At the time of the transfer, Doug Peart ("Peart"), General Manager of Project Delivery for SURF Americas, determined that the Global SURF Projects Lead "seemed to be a good fit" and that Plaintiff was qualified to fill the position.[22]

---

[17]     See id.

[18]     Doc. 74-1, Ex. A-17 to Defs.' Mot. for Summ. J., Email dated Mar. 21, 2014, from Jeremy Jackson to Jamie Allen, et. al.; see also Doc. 74-8, Decl. of Jamie Allen ¶¶ 5-7.

[19]     "SURF" stands for "Subsea, Umbilicals, Risers, and Flowlines." See Doc. 74-5, Ex. E to Defs.' Mot. for Summ. J., Dep. of Susan Moore p. 25.

[20]     See Doc. 74-1, Ex. A-4 to Defs.' Mot. for Summ. J., Indiv. Dev. Plan Report; Doc. 74-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Doug Peart p. 12.

[21]     See Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 110-11.

[22]     See Doc. 74-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Doug Peart pp. 12-13, 52-53.

Near the end of 2014, after working as the Global SURF Projects Lead for several months, Plaintiff received her 2014 performance review.[23] Venkataraman assessed Plaintiff a performance rating even lower than the rating assessed by Oladunjoye for 2013.[24] In Plaintiff's 2014 Appraisal Report, Venkataraman noted that she had been "unable to make an impact" in her role as the Global SURF Projects Lead "in large measure due to her inability to create and sustain collaborative relationships with stakeholders," that she was defensive and lacked personal accountability, and that she "believe[d] she [was] right and others [were] uniformly at fault/[were] flawed or biased."[25] He represented that Plaintiff had received feedback on the issues described but had "failed to respond to it or change behavior."[26]

At that time, Venkataraman sought the approval of Human Resources to terminate Plaintiff based on her poor performance.[27] Alyssa Snider ("Snider"), Defendant SIEP's Human Resources Account

---

[23]   See Doc. 74-1, Ex. A-21 to Defs.' Mot. for. Summ. J., Pl.'s 2014 Performance Rev.

[24]   Compare Doc. 74-1, Ex. A-22 to Defs.' Mot. for. Summ. J., Pl.'s 2013 Performance Rev. with Doc. 74-1, Ex. A-21 to Defs.' Mot. for. Summ. J., Pl.'s 2014 Performance Rev.; see also Doc. 74-2, Ex. B to Defs.' Mot. for Summ. J., Dep. of Alyssa Snider pp. 74, 76; Doc. 74-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Doug Peart p. 25.

[25]   Doc. 74-1, Ex. A-21 to Defs.' Mot. for. Summ. J., Pl.'s 2014 Performance Rev. p. 3.

[26]   Id.

[27]   See Doc. 74-2, Ex. B to Defs.' Mot. for Summ. J., Dep. of Alyssa Snider pp. 55-56, 93.

Manager, then assigned a Human Resources staff member the task of compiling a discipline summary on Plaintiff.[28] After completing the summary, the staff member recommended that Defendant SIEP terminate Plaintiff.[29]

In December 2014, several relevant events occurred. Plaintiff contacted Human Resources and requested a review of her performance evaluation, but, according to Plaintiff, Human Resources took no action.[30] Additionally, Venkataraman accepted a transfer to India, and Plaintiff applied for his position, even though it was at a higher job classification than her own.[31] Peart, who was the supervisor for the position, did not conduct any formal interviews but informally discussed the position with the applicants who reached out to him about it; Plaintiff was not one of those applicants.[32] Peart recommended Susan Moore ("Moore") for the position based on her job classification (which was the same as the position), her work experience, and his informal discussion with

---

[28]   See id. pp. 93-94.

[29]   See Doc. 74-2, Ex. B-12 to Defs.' Mot. for Summ. J., Discipline Summ. p. 12.

[30]   See Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 116-17.

[31]   See Doc. 74-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Doug Peart pp. 48-49.

[32]   See Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶ 12.

her.[33] Peart testified, "Sue Moore, was capable, qualified, had the right potential, future potential to give her that broadening assignment in the hopes of developing another Shell leader."[34]

After Plaintiff learned of the decision, she sent Peart an email seeking feedback as to why she had not been selected.[35] Plaintiff requested that Peart intervene to address several work issues organized under four general headings: (1) "July – December 2014 work performance;" (2) "Safety Critical Equipment & Shell HSE Exposure;" (3) "Diversity & Inclusion;" and (4) "Personal Attacks."[36] Although Plaintiff thoroughly addressed these topics and cited specific accomplishments or issues in each category, she made no complaints of gender discrimination or retaliation.[37] Under the category of "Diversity & Inclusion," Plaintiff mentioned her "proposed HSE Impactful Plan" and complained:

> There was no recognition that my many years solving
> problems across the upstream oil industry value-chain may
> lead me to explore more novel approaches to fit the
> particular work context.  Moreover, at my grade level it
> is unseemly that I be dictated to on how I should best
> get the job done right.  I am doubtful that this is

---

[33]    See Doc. 74-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Doug Peart p. 49; Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶ 11.

[34]    Doc. 74-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Doug Peart p. 49.

[35]    See Doc. 74-2, Ex. B-2 to Defs.' Mot. for Summ. J., Email from Pl. to Doug Peart Dated Dec. 31, 2014; Doc. 74-3, Ex. C to Defs.' Mot. for Summ. J., Dep. of Doug Peart pp. 49-50.

[36]    Doc. 74-2, Ex. B-2 to Defs.' Mot. for Summ. J., Email from Pl. to Doug Peart Dated Dec. 31, 2014.

[37]    See id.

> [Venkataraman's] behavior toward others when they
> proposed their own HSE Impactful Plan. Altogether, the
> behavior projected is at odds with Shell's Diversity &
> Inclusion goal – namely to tap knowledge from an eclectic
> mix of sources for performance gains.[38]

In the "Personal Attacks" section, Plaintiff complained that she had been "subjected to much [sic] personal attacks on [her] professional competence" and listed several examples, none of which suggested any gender or retaliatory motive.[39]

After a discussion with Peart on the issues raised in Plaintiff's email, Plaintiff emailed Peart again in January 2015 asking him to elaborate on the performance issues that, according to Peart's feedback, had resulted in her "not obtaining a work progression."[40] Peart responded that the fundamental answer was "there was a more qualified candidate for the position."[41] He also listed areas on which Plaintiff should focus before seeking a position at the manager level.[42] As for her work concerns, Peart recommended that Plaintiff contact Snider in Human Resources, and he "strongly encouraged" Plaintiff to engage in "some personal reflection on personal accountability, better alignment of expectations with supervisor, and further practice and focus on

---

[38]   Id.

[39]   Id.

[40]   Doc. 74-3, Ex. C-4, Email from Pl. to Doug Peart Dated Jan. 21, 2015.

[41]   Id.

[42]   See id.

8

influencing skills."[43]

In January 2015, SIEP decided, "due to the economic downturn in the oil and gas industry"[44] and Plaintiff's "inability to effectively communicate and add value in her role," to eliminate Plaintiff's position "and absorb the little remaining work within another role in the organization."[45] According to Snider, the decision was made by a group of individuals, including Snider, Snider's supervisor, Venkataraman, Peart, Peart's supervisor, and another Human Resources professional.[46]

On February 10, 2015, Plaintiff continued her email dialogue with Peart, stating, "Thanks for your feedback. My observation is that the feedback is generic and not supported by specific examples to support your point."[47] Plaintiff listed several examples from her work history to counter each of the work deficits identified by Peart.[48] In addition to vowing that she would soon contact Snider

---

[43]    Id.

[44]    Plaintiff later acknowledged that she had informed Venkataraman in the third quarter of 2014 that her position "was not viable" based on verbal and face-to-face feedback from stakeholders. Doc. 74-1, Ex. A-9 to Defs.' Mot. for Summ. J., Email from Pl. to Alyssa Snider, et. al., Dated Mar. 10, 2015.

[45]    See Doc. 74-6, Ex. F to Defs.' Mot. for. Summ. J., Decl. of Alyssa Snider ¶ 27; Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶ 15.

[46]    See Doc. 74-6, Ex. F to Defs.' Mot. for. Summ. J., Decl. of Alyssa Snider ¶ 27; Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶ 15.

[47]    Doc. 74-1, Ex. A-19 to Defs.' Mot. for Summ. J., Email from Pl. to Doug Peart Dated Feb. 10, 2015.

[48]    See id.

to express her concerns and develop a plan of action, Plaintiff concluded:

> A dogged pursuit of this issue is not about me but the people who shall surely come after me. After +25 years mere tokenism is not enough but full acceptance that skills and the ability to get the job done right is paramount. Good people should not remain passive in the face of bullying and injustice. Just as our desire is to have the best lawyer and doctor on our side so should it be for the engineering profession.[49]

Plaintiff did not mention gender discrimination, retaliation, or any other illegal bias.[50]

On Monday, February 16, 2015, Plaintiff emailed Snider, asking "to discuss on-going issues with my year evaluation" and stating that the situation had deteriorated over the prior two years.[51] Plaintiff commented that she refused to have her "good name as a Subsea Engineering professional tarnished because of the personal biases of others."[52] She attached the lengthy email that she had sent Peart in December.[53] Although she referred to "personal biases," she did not refer to gender discrimination or retaliation and did not cite any example of either or attribute any action to gender discrimination or retaliation.[54]

---

[49]    Id.

[50]    See id.

[51]    Doc. 74-2, Ex. B-11 to Defs.' Mot. for Summ. J., Email from Pl. to Alyssa Snider Dated Feb. 16, 2015.

[52]    Id.

[53]    See id.

[54]    See id.

Also on February 16, 2015, Peart and Moore informed Plaintiff that her position as Global SURF Projects Lead was being eliminated.[55] Peart and Moore explained that they would allow Plaintiff two months to find another position within SIEP, and, if she could not, she would be terminated.[56] Peart "highly recommended" that Plaintiff also search for employment externally because her performance and relationship history at SIEP would limit her opportunities to secure another position within the company.[57] Plaintiff testified that this meeting occurred "just hours after [she] had again complained [to Doug Peart] that [her] performance reviews were discriminatory based upon [her] gender and previous complaints of gender discrimination."[58] She also testified that this complaint was made at the meeting itself.[59]

On February 23, 2015, Plaintiff sent Snider a fifteen-page

---

[55]    See Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 118-120; Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶ 16.

[56]    See Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶ 16.

[57]    See id.

[58]    Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. p. 108. Snider testified that she was made aware of Plaintiff's discrimination and retaliation complaints after the meeting February 16, 2015. See Doc. 74-6, Ex. F to Defs.' Mot. for. Summ. J., Decl. of Alyssa Snider ¶ 30. Doug Peart testified that Plaintiff never asserted discrimination or retaliation in connection with any complaint she raised to him and that he was not aware of the discrimination and retaliation allegations until the filing of this lawsuit. See Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶¶ 16, 17.

[59]    See Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 160-61.

document, which Plaintiff titled "Complainant Affidavit."[60]
Although the document was dated December 17, 2014, it recounted
events that had occurred after that date, including the meeting on
February 16, 2015, when Peart and Moore informed Plaintiff that her
position was being eliminated and Peart suggested that she look for
employment externally.[61]  Plaintiff told Snider that the document
was dated December 17, 2014, because that is when she started
compiling the information.[62]  In the document, Plaintiff asserted
that she had suffered gender and national-origin discrimination and
retaliation at SNEPCo in 2013 and gender, race, and national-origin
discrimination and retaliation at SIEP after her transfer.[63]

On February 26, 2015, Plaintiff filed a discrimination claim
with the Texas Workforce Commission ("TWC").[64]  Snider investigated
Plaintiff's claims and found no evidence of gender discrimination
or retaliation.[65]  Plaintiff did not find another position within

---

[60]     See Doc. 74-2, Ex. B to Defs.' Mot. for Summ. J., Dep. of Alyssa
Snider p. 87; Doc. 74-4, Ex. D-7 to Defs.' Mot. for Summ. J., Complainant Aff.;
Doc. 74-6, Ex. F to Defs.' Mot. for Summ. J., Decl. of Alyssa Snider ¶¶ 30, 31.

[61]     See Doc. 74-4, Ex. D-7 to Defs.' Mot. for Summ. J., Complainant Aff.
p. 15.

[62]     See Doc. 74-6, Ex. F to Defs.' Mot. for Summ. J., Decl. of Alyssa
Snider ¶ 31.

[63]     See id. p. 1.

[64]     See Doc. 86-2, Ex. 2 to Pl.'s Resp. to Defs.' Mot. for Summ. J.,
Pl.'s Charge of Discrimination.

[65]     See Doc. 74-2, Ex. B to Defs.' Mot. for Summ. J., Dep. of Alyssa
Snider pp. 26-28; Doc. 74-6, Ex. F to Defs.' Mot. for Summ. J., Decl. of Alyssa
Snider ¶ 32.

the company and was terminated on April 30, 2015.[66]  Susan Moore

assigned Frank Pattee, another project engineer in the SURF group,

the remaining duties from Plaintiff's position to complete in

addition to his own.[67]

## B. __Procedural Background__

On March 4, 2015, Plaintiff filed her original complaint in

state court, bringing race, gender, and national origin

discrimination and retaliation claims against Shell Defendants.[68]

On April 24, 2015, Shell Defendants removed this case from the 152nd

Judicial District Court for Harris County.[69]  Plaintiff amended her

complaint on February 2, 2016, after receiving a notice of right to

sue letter from the Equal Employment Opportunity Commission

("EEOC") on January 15, 2016.[70]  In her amended complaint, Plaintiff

retained only the claims for gender discrimination and

retaliation.[71]  Shell Defendants filed an answer to the amended

complaint, asserting the lack of subject matter jurisdiction,

failure to state a claim, failure to mitigate damages, violation of

---

[66]     See Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. p. 108.

[67]     See Doc. 74-5, Ex. E to Defs.' Mot. for Summ. J., Dep. of Susan Moore
pp. 40-42.

[68]     See Doc. 1, Not. of Removal p. 1.

[69]     See id.

[70]     See Doc. 19, Pl.'s Am. Compl.

[71]     See id.

due process, and statutory damage caps as defenses.[72]

On February 3, 2017, Shell Defendants filed the pending motion for summary judgment.[73] Plaintiff filed a response to the motion for summary judgment on March 21, 2017.[74] Shell Defendants in turn filed a reply in support of their motion for summary judgment.[75] Shell Defendants' reply argued that Plaintiff's failure to address three key arguments raised in the motion indicates her abandonment of those claims.[76] Shell Defendants' reply also raised objections to Plaintiff's summary judgment evidence.[77]

The court now takes the pending motion for summary judgment under consideration, beginning with Defendants' objections to Plaintiff's summary judgment evidence.

## II. Objections to Evidence

A party must support its factual positions on summary judgment by citing to particular evidence in the record. Fed. R. Civ. P. 56(c)(1). Federal Rule of Civil Procedure 56(c)(2) allows a movant to object to exhibits that contain material that "cannot be presented in a form that would be admissible in evidence" under the Federal Rules of Evidence. Cf. Lee v. Offshore Logistical &

---

[72] See Doc. 21, Defs.' Ans.

[73] See Doc. 73, Defs.' Mot. for Summ. J.

[74] See Doc. 86, Pl.'s Resp. to Defs.' Mot. for Summ. J.

[75] See Doc. 89, Defs.' Reply to Pl.'s Opp. to the Mot. for Summ. J.

[76] See id. p. 1.

[77] See id. p. 6-8.

Transport, L.L.C., 859 F.3d 353, 355 (5ᵗʰ Cir. 2017)(explaining that the rule seeks "[t]o avoid the use of materials that lack authenticity or violate other evidentiary rules").  The trial court has discretion to determine whether "to admit or exclude evidence."  See MCI Comm'ns Servs., Inc. v. Hagan, 641 F.3d 112, 117 (5ᵗʰ Cir. 2011)(stating that the standard of review for evidentiary decisions is abuse of discretion).

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Relevant evidence has a "tendency to make a fact more or less probable than it would be without the evidence" and relates to a fact "of consequence in determining the action."  Fed. R. Evid. 401.  Affidavits supporting summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); see also Fed. R. Evid. 602.  Conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence.  Roach v. Allstate Indem. Co., 476 F. App'x 778, 780 (5ᵗʰ Cir. 2012)(unpublished)(citing S.E.C. v. Recile, 10 F.3d 1093, 1097 (5ᵗʰ Cir. 1993)).  Hearsay is not admissible evidence.  Fed. R. Evid. 802.  Hearsay is a statement, not made while testifying in the current litigation, that is offered for "the truth of the matter asserted in the statement."  Fed. R. Evid. 801.

Plaintiff objected that Shell Defendants "offered evidence that was never previously disclosed" when, in their disclosures Shell Defendants provided "only very general identifications of potential witnesses" and the evidence submitted goes beyond the identified "substance of anticipated testimony for those witnesses."[78] Plaintiff fails to point the court to specific portions of the exhibits that fall outside of Shell Defendants' disclosures and to the reasons each portion is inadmissible. The court declines the opportunity to review every exhibit in its entirety and to compare each to Shell Defendants' disclosures. Plaintiff's objection is **OVERRULED**.

Shell Defendants object to Plaintiff's Exhibit 1, the amendment to her EEOC charge in the form of a declaration. They argue that it is not based on personal knowledge and contains nothing more than conclusory allegations and bare speculation. Shell Defendants provide one example of each from the declaration. While the court agrees that portions of the declaration contain inadmissible evidence, the court **GRANTS** Shell Defendants' objection only as to the examples provided: (1) her conclusory allegations regarding the reasons Defendant SIEP terminated Plaintiff; and (2) her speculation regarding whether Defendant SIEP violated its policies related to performance evaluations. The court has not taken into consideration any portion of Plaintiff's declaration

---

[78]    See Doc. 86, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 11.

that is incompetent summary judgment evidence and, therefore, **OVERRULES** Shell Defendants' objections to the remainder of the declaration.

Shell Defendants object to emails from Plaintiff to Peart and Snider, arguing that they contain hearsay statements. However, they are being offered to show what Defendant SIEP knew and when, not for the truth of the matters asserted. Thus, the objection is **OVERRULED.**

Shell Defendants object to evidence cited in Plaintiff's response in the first three sections of the factual background because it relates to claims that Shell Defendants contend Plaintiff abandoned and is, therefore, irrelevant. Regardless of the court's ruling on the abandonment issue, the court finds the factual background as a whole relevant and **OVERRULES** Shell Defendants' objection on that basis.

Shell Defendants object to other portions of Plaintiff's evidence on the basis that Plaintiff "mischaracteriz[ed] and misrepresent[ed] deposition testimony and the content of other exhibits" and cites several examples.[79] The court **OVERRULES AS MOOT** Shell Defendants' specific examples as the court was not misled and the remainder of Plaintiff's evidence as the court did not consider any incompetent summary judgment evidence.

Shell Defendants object to numerous exhibits that Plaintiff

_____

[79]    Doc. 89, Shell Defs.' Reply pp. 10-11.

submitted but did not cite in her brief. Although the court is only required to consider the cited evidence, the court is free to consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The court **OVERRULES** this objection.

### III. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013) (quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131

18

(1992). If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in her pleading but must respond with evidence showing a genuine factual dispute. <u>Stauffer</u>, 741 F.3d at 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)).

When considering the evidence, "courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." <u>Savant v. APM Terminals</u>, 776 F.3d 285, 288 (5th Cir. 2014)(quoting <u>Anderson</u>, 477 U.S. at 248. However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." <u>Meinecke v. H & R Block of Houston</u>, 66 F.3d 77, 81 (5th Cir. 1995). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

## IV. Analysis

Shell Defendants seek summary judgment on all of Plaintiff's claims based on four substantive arguments.[80] Shell Defendants contend that any claims against Defendant Shell Oil Company fail as a matter of law because it was not her employer. Shell Defendants contend that Plaintiff cannot bring claims regarding her employment

---

[80]    Shell Defendants also argue that Plaintiff abandoned certain claims by failing to respond to Shell Defendants' arguments in favor summary judgment on those claims.

in Nigeria under Title VII or TCHRA because neither statute applies to non-U.S. citizens working extraterritorially. Shell Defendants also argue that certain claims are barred because Plaintiff did not file a timely charge of discrimination as to all of her claims. As a result, Shell Defendants argue, Plaintiff's only remaining claims are those that relate to her employment in Houston after returning from Nigeria, and she has not established those claims as a matter of law.

In her response, Plaintiff argues that she engaged in protected activity, that her protected activity led to her termination, and that she has substantial evidence of retaliatory pretext. In support of her claim of gender discrimination, Plaintiff offers only this:

> In addition to the Ms. Noel's evidence of
> retaliation, as shown above, Ms. Noel also has
> offered evidence that her termination was
> motivated by her gender. Accordingly, Ms.
> Noel's evidence, along with the evidence of
> pretext, clearly present issues for a jury to
> resolve. As a result, Defendants' Motion for
> Summary Judgment must be denied.[81]

Additionally, Plaintiff does not offer any response to Shell Defendants' arguments regarding Defendant Shell Oil Company, the applicability of Title VII or TCHRA to her employment in Nigeria, or her failure to timely file a charge of discrimination on all claims.

---

[81]     Doc. 86, Pl.'s Resp. to Defs.' Mot. for Summ. J. p. 11.

## A.     Defendant Shell Oil Company

An employer is prohibited from engaging in discrimination on the basis of gender, among other traits, and retaliation for making charges of discrimination, among other protected activity.  See 42 U.S.C. §§ 2000e-2(a); 2000e-3.  Generally, only "employers" can be held liable under Title VII.[82]  Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007)(citing Oden v. Oktibbeha Cty., Miss., 246 F.3d 458, 462 (5th Cir. 2001)).  In order to survive summary judgment against a putative employer, a plaintiff must present evidence both that the defendant meets the statutory definition of "employer" and that an employment relationship existed between the plaintiff and the defendant.  Muhammad v. Dallas Cty. Cmty. Supervision & Corrs. Dep't, 479 F.3d 377, 380 (5th Cir. 2007)(citing Deal v. State Farm Cty. Mut. Ins. Co. of Tex., 5 F.3d 117, 118 n.2 (5th Cir. 1993)).

Similarly, TCHRA imposes liability on employers who discriminate or retaliate against employees.[83]  See Tex. Lab. Code §§ 21.051, 21.055; Miles v. Lee Anderson Co., 339 S.W.3d 738, 742 (Tex. App.—Houston [1st Dist.] 2011, no pet.))("To recover under the TCHRA, a plaintiff must prove that the defendant falls within the statutory definition of 'employer.'").  "An entity is not subject

---

[82]     Title VII also prohibits certain discriminatory and retaliatory actions taken by employment agencies and labor organizations.  See 42 U.S.C. § 2000e-2(b),(c), 2000e-3.

[83]     Like Title VII, TCHRA also prohibits certain discriminatory actions and retaliation by employment agencies and labor organizations.  See Tex. Lab. Code §§ 21.052, 21.053, 21.055.

to liability under the TCHRA unless the plaintiff proves that (1) the entity falls within the statutory definition of employer, (2) an employment relationship existed between it and the plaintiff, and (3) the defendant 'controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria.'" <u>Miles</u>, 339 S.W.3d at 742 (quoting <u>NME Hosps., Inc. v. Rennels</u>, 994 S.W.2d 142, 147 (Tex. 1999)).

Here, Shell Defendants offer proof that Plaintiff worked for SIEP in the United States and SNEPCo in Nigeria but never directly worked for Shell Oil Company.[84]  Plaintiff did not sue SNEPCo and now fails to offer any response at all to Shell Defendants' evidence that Plaintiff was never employed by Shell Oil Company, much less offer evidence in support of all of the elements required to prove it was her employer under either the federal or Texas statute.

Accordingly, Plaintiff's Title VII and TCHRA claims against Defendant Shell Oil Company fail as a matter of law.

### B.  **Title VII and TCHRA Inapplicability**

Title VII, which defines "employee" as including only U.S. citizens with respect to employment in a foreign country, also explicitly excepts from its coverage "employer[s] with respect to the employment of aliens outside any State."  42 U.S.C. §§ 2000e-1(a), 2000e(f); <u>Mota v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 261

---

[84]    <u>See</u> Doc. 74-6, Ex. F to Defs.' Mot. For Summ. J., Decl. of Alyssa Snider § 8.

F.3d 512, 524 n.34 (5th Cir. 2001), <u>superseded on other grounds</u>, (citing 42 U.S.C. § 2000e-1(a)). TCHRA offers no extraterritorial coverage, explicitly stating that it does not apply to "the employment of a person outside [Texas]." Tex. Lab. Code § 21.111.

While Plaintiff was working in Nigeria, January 2013 through June 2014, she was not a citizen of the United States.[85] Before becoming a naturalized U.S. citizen in April 2016, Plaintiff was a citizen of Trinidad and Tobago.[86] Because Plaintiff was not a U.S. citizen and was working outside of the United States, she cannot pursue Title VII or TCHRA claims for any violations occurring during that period of employment.

Therefore, Plaintiff's claims regarding employment activity in Nigeria fail as a matter of law.[87]

### C.   <u>Title VII Exhaustion Requirement</u>

In Texas, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful act if it is initially filed with the authorized state or local agency.  <u>See</u> 42 U.S.C. § 2000e-5(e)(1)(limiting the time to file to 180 days if not filed locally); <u>Patton v. Jacobs Eng'g Grp.</u>, No. 16-30879, 2017 WL

---

[85]   <u>See</u> Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 26-27.

[86]   <u>See</u> <u>id.</u> p. 27.

[87]   This includes the decision to transfer Plaintiff back to the United States, of which Plaintiff was notified in March 2014 while she was working in Nigeria.   <u>Cf.</u> <u>Green v. Brennan</u>, _____ U.S. _____, 136 S.Ct. 1769, 1782 (2016)(expanding case law that held the limitations period for a wrongful-discharge claim runs from the date that the employer notified the employee of termination, not from the last day from employment).

3014429, at *3 (5th Cir. July 17, 2017)(slip copy)(applying 42 U.S.C. § 2000e-5 to a disability claim under the Americans with Disabilities Act). The 300-day administrative filing deadline is calculated from the date the plaintiff knows or should have known of the alleged unlawful act. See <u>Vadie v. Miss. State Univ.</u>, 218 F.3d 365, 371 (5th Cir. 2000). A failure to exhaust administrative remedies is a bar to filing a lawsuit. See <u>Hernandez v. Metro. Transit Auth. of Harris Cty.</u>, 673 F. App'x 414, 416 n.1 (5th Cir. 2016)(citing <u>Price v. Choctaw Glove & Safety Co.</u>, 459 F.3d 595, 598 (5th Cir. 2006).

An administrative complaint under TCHRA must be filed with the Texas Workforce Commission within 180 days of the alleged unlawful employment practice. Tex. Lab. Code § 21.202(a). Failure to comply with the Texas administrative filing deadline is a jurisdictional bar to filing a lawsuit. See <u>Specialty Retailers, Inc. v. DeMoranville</u>, 933 S.W.2d 490, 492 (Tex. 1996)(stating that the deadline is "mandatory and jurisdictional").

Plaintiff filed a claim with the TWC on February 26, 2015. Applying the 300-day administrative filing deadline, only the employment actions occurring after May 2, 2014, factor into her Title VII discrimination and retaliation calculus. Applying TCHRA's 180-day filing deadline, only the employment actions occurring after August 30, 2014, factor into her TCHRA discrimination and retaliation calculus.

Accordingly, Plaintiff's claims of discrimination and

24

retaliation under Title VII related to events before May 2, 2014, and those under TCHRA before August 30, 2014, fail as a matter of law.

### D.  <u>Gender-Discrimination Claim</u>

Title VII prohibits employers from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  Similarly, TCHRA prohibits employers from refusing to hire or discharging an individual, from discriminating against an individual in connection with compensation, terms, conditions, or privileges of employment, and from limiting, segregating, or classifying an individual that would deprive her of an employment opportunity or otherwise adversely affect her status. Tex. Labor Code § 21.051.

TCHRA was designed to "provide for the execution of the policies of Title VII." Tex. Lab. Code 21.001(1).  The Supreme Court of Texas affirmed this purpose, stating that the Texas Legislature "intended to correlate state law with federal law in employment discrimination cases."  <u>AutoZone, Inc. v. Reyes</u>, 272 S.W.3d 588, 592 (Tex. 2008)(quoting <u>Ysleta Indep. Sch. Dist. v. Monarrez</u>, 177 S.W.3d 915, 917 (Tex. 2005)).  Both federal and state courts therefore "apply analogous federal statutes and cases when interpreting TCHRA." <u>Jurach v. Safety Vision, LLC</u>, 642 F. App'x 313, 318 (5th Cir. 2016)(unpublished); <u>see also Heisohn v. Carabin</u>

& Shaw, P.C., 832 F.3d 224, 234–35 (5th Cir. 2016) (adopting the Texas Supreme Court's use of Title VII and its relevant case law as interpretive guides when resolving TCHRA issues); Mission Consol. Indep. Sch. Dist. v. Garcia, 372 S.W.3d 629, 633–34 (Tex. 2012) (stating that Texas courts consistently rely on federal law to guide the reading of TCHRA).

In the absence of direct evidence, courts analyze discrimination claims under a burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Alkhawaldeh v. Dow Chem. Co., 851 F.3d 422, 426 (5th Cir. 2017). Under this approach, a plaintiff may trigger a presumption of discrimination by establishing a prima-facie case. See id. To establish a prima-facie case of discrimination, the plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by or was treated less favorably than someone outside of her protected. See id.; Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512–13 (5th Cir. 2001).

After a plaintiff has established a prima-facie case, the burden shifts to the defendant to proffer legitimate, nondiscriminatory reasons for its actions. Alkhawaldeh, 851 F.3d at 426. If the defendant satisfies this burden, "the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." Id. At the summary

26

judgment stage, the plaintiff must produce some evidence "demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). In certain circumstances, evidence that an employer's proffered reason is false may be enough to raise a fact issue on pretext if the jury could infer from the falsity of the explanation that discrimination was the real reason. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000); Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 740 (Tex. 2003)(stating that, even if the proffered reason is false, the plaintiff's evidence must indicate that discrimination was the real reason).

The only element that Shell Defendants do not challenge is the first, that Plaintiff is a member of a protected class. The court looks at the other four elements of the prima-facie case before discussing the shifting burdens.

### 1. Qualification for Global SURF Projects Lead

Shell Defendants argue that Plaintiff was not qualified for the Global SURF Projects Lead because "she lacked the basic core competence required by the position."[88] Plaintiff fails to respond to this argument. Regardless of Plaintiff's lack of response, Shell Defendants' legal argument does not comport with the summary judgment evidence. Peart testified that, at the time Plaintiff

---

[88]    See Doc. 73, Defs.' Mot. For Summ. J. p. 15.

transferred back to Houston, the Global SURF Projects Lead position seemed to be a good fit and that Plaintiff was qualified for the position.

Peart's testimony is strong evidence that Plaintiff was qualified for the position, even if she did not perform the job well. Plaintiff's qualifications or abilities did not change during the months that she held the job,[89] and Shell Defendants fail to show how Plaintiff was any less qualified at termination than when she was hired.

The evidence indicates a fact question on the qualification element of Plaintiff's gender-discrimination claim.

## 2. Adverse Employment Action

Defendant argues that the events about which Plaintiff complains do not reach the level of adverse employment actions. To be clear, the only employment actions that are actionable are those that occurred after Plaintiff returned from Nigeria. For Title VII, the actionable date is July 1, 2014, the date she returned to work in Houston,[90] and, for TCHRA, it is August 30, 2014, 180 days before she filed a charge of discrimination. The difference in

---

[89] At least one court recognized that an employee may no longer be qualified for the position held due, for example, to a medical inability to perform the duties. Cf. McIntyre v. San Antonio Water Sys., Civil Case No. 16-cv-399 (RCL), 2017 WL 1532608, at *7 (W.D. Tex. Apr. 26, 2017)(slip copy)(finding, in a discussion about claims of race discrimination, that the plaintiff failed to produce evidence that he remained qualified for his position after he became medically incapable of performing his work duties).

[90] Although May 2, 2014, is the administrative exhaustion date, Plaintiff could not pursue claims for any actions taken prior to her return to the United States.

actionable dates is not significant, however, because the only post-Nigeria actions that Plaintiff alleged were discriminatory happened after August 30, 2014.

For Title VII discrimination claims, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007) (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002), overruled on other grounds, Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53 (2006)). "[D]isciplinary warnings and negative performance evaluations do not constitute adverse employment actions because they have only a tangential effect, if any, on ultimate employment decisions." Arrieta v. Yellow Transp., Inc., Civil Action No. 3:05-CV-2271-D, 2008 WL 5220569, at *5, (N.D. Tex. Dec. 12, 2008)(unpublished)(citing cases).

Plaintiff primarily complains about her performance evaluations, Defendant SIEP's failure to interview her for Venkataraman's position, and her termination. The performance evaluations do not constitute adverse employment actions, and neither does the refusal to interview.[91] As to the latter, however, the court infers in Plaintiff's favor that her real complaint is that she was denied the promotion to Venkataraman's position. A denial of a promotion is actionable.

_____

[91] The court notes that Peart performed no formal interviews before recommending Moore for the position. See Doc. 74-7, Ex. G to Defs.' Mot. for Summ. J., Decl. of Doug Peart ¶ 12.

The evidence indicates a fact question on the adverse-employment-action element of Plaintiff's gender-discrimination claim but only with regard to the denial of promotion and the termination.

### 3. Replacement/Less Favorable Treatment

Shell Defendants argue that Plaintiff fails to provide evidence that she was replaced by someone outside of her protected class or that similarly situated male employees were treated more favorably. Once again, Plaintiff offers no argument on this element of her gender-discrimination claim.

The evidence shows that Moore, a female employee, was hired for Venkataraman's position and that no one replaced Plaintiff when she was terminated. Thus, Plaintiff cannot meet this element of the prima-facie discrimination case through evidence that she was replaced by someone outside of her protected class.

When the claim is disparate treatment, the plaintiff may satisfy the fourth element of a prima-facie case by identifying "at least one coworker outside of [her] protected class who was treated more favorably 'under nearly identical circumstances.'" Alkhawaldeh, 851 F.3d at 426 (quoting Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009)).

> This coworker, known as a comparator, must hold the 'same job' or hold the same job responsibilities as the Title VII claimant; must 'share[ ] the same supervisor or' have his 'employment status determined by the same person' as the Title VII claimant; and must have a history of 'violations' or 'infringements' similar to that of the Title VII claimant.

Id.

Plaintiff points to no similarly situated male employee who was treated more favorably than she and complains of no male employee's receiving more favorable treatment during her employment with Defendant SIEP. The court finds no evidence of a male comparator whatsoever in the record evidence. Plaintiff admitted as much in her deposition, stating that she is unaware of any male employee who was treated more favorably than herself.[92]

Plaintiff fails to meet her burden of production on the last element of her prima-facie case.

### 4. Remaining Burdens

As Plaintiff failed to meet her initial burden under the burden-shifting analysis, the court need not consider the remaining burdens before finding appropriate summary judgment on Plaintiff's gender-discrimination claim in Shell Defendants' favor. However, the court addresses both Defendant SIEP's proffered legitimate non-discriminatory reason and the issue of pretext only to show that both of those burdens also favor Shell Defendants. Assuming Plaintiff could raise a fact question on all of the elements of the prima-facie case, the court turns to the reasons articulated by Defendant SIEP for denying Plaintiff a promotion to Venkataraman's position and for terminating Plaintiff.

---

[92] _See_ Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 112-13.

As to the former action, Peart testified that he recommended Moore for Venkataraman's position because she had a higher job classification than Plaintiff and was the better qualified candidate, which is a legitimate, nondiscriminatory reason for not promoting Plaintiff. As to the latter action, Peart and Snider testified that the reason for eliminating Plaintiff's position was an economic decline in the industry and Plaintiff's ineffective communication in the role, both of which are legitimate, nondiscriminatory reasons for eliminating her position. In fact, the evidence shows that Plaintiff agreed that her position lacked continuing viability. Having offered legitimate, nondiscriminatory reasons for the adverse employment actions, Defendant SIEP shifted the burden back to Plaintiff to demonstrate pretext.

"To carry [the pretext] burden in a discrimination case, the plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." <u>Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.</u>, 719 F.3d 356, 363 (5th Cir. 2013).

Plaintiff points to no evidence rebutting Defendant SIEP's reasons, and the court finds none. Plaintiff's conclusory assertion that her 2014 performance evaluation was false cannot meet her burden of raising a fact issue that her position's elimination was pretext for discrimination. Plaintiff has also failed to raise a issue of pretext concerning her non-selection for the Venkataraman position because a woman was selected for that

32

position. Even if Defendant SIEP harbored other reasons for terminating Plaintiff, nothing in the evidence suggests that the articulated reasons were false or that Defendant SIEP failed to promote Plaintiff and terminated her because of her gender. Notably, Plaintiff can point to none. In fact, although Plaintiff asserted that Defendant SIEP had no basis in fact to terminate her, she refused to speculate whether gender discrimination was the reason for her termination.[93]

Plaintiff's gender-discrimination claim fails as a matter of law.

### E. Retaliation

Both Title VII and TCHRA prohibit employers from retaliating against an employee because she has filed a complaint of discrimination. See 42 U.S.C. § 2000e-3(a); Tex. Labor Code Ann. § 21.055. To establish a prima-facie case of retaliation, a plaintiff must prove that: (1) she participated in a protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between her protected activity and the adverse action. Buckhanan v. Shinseki, 665 F. App'x 343, 346-47 (5th Cir. 2016)(unpublished)(quoting Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009)). The burden-shifting analysis applies to retaliation claims. See Haire, 719 F.3d at 367.

---

[93] See Doc. 74-1, Ex. A to Defs.' Mot. for Summ. J., Pl.'s Dep. p. 56 (stating, "So the gender bias might have happened, but the basis for why they terminate you maybe something totally different. So I cannot—I'm not going try to speculate about whether I was fired because I was a female or not.").

### 1. Protected Activity

Protected activity includes complaining to supervisors about acts of unlawful discrimination. See 42 U.S.C. § 2000e-3(a)(listing making a charge as a protected activity); <u>Valderaz v. Lubbock Cty. Hosp. Dist.</u>, 611 F. App'x 816, 820-21 (5th Cir. 2015)(unpublished)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

Shell Defendants argue that Plaintiff did not complain to anyone at Defendant SIEP about illegal discrimination until after she was notified that her job was eliminated. Plaintiff argues that she complained to Peart and/or Snider in December 2014, January 2015, and February 2015.

The evidence shows that Plaintiff requested that Human Resources review her December 2014 performance evaluation, that Plaintiff generally complained of her treatment and personal biases in an email to Peart after she was not promoted to Venkataraman's position in December 2014, that she continued to tout her work performance in reply emails sent to Peart in January and February 2015, and that she sent Snider an email in February 2015 asking to discuss the 2014 performance evaluation. None of these contacts included complaints of gender discrimination or any other illegal bias, and, therefore, none constitutes protected activity. See <u>Paske v. Fitzgerald</u>, 785 F.3d 997, 986 (5th Cir. 2015)(stating that the Fifth Circuit has consistently not recognized vague complaints that do not reference employment practices made illegal by Title

VII as protected activity); <u>Moore v. United Parcel Serv., Inc.</u>, 150

F. App'x 315, 319 (5th Cir. 2005)(unpublished)(noting that

generalized complaints of treatment that do not oppose or protest

discrimination are not protected activity).

Plaintiff testified that, just hours before the February 16,

2015 meeting at which she learned that Defendant SIEP was

eliminating her position, she complained to Peart that her

performance evaluations were discriminatory because of her gender

and retaliatory because of her complaint of gender discrimination

at SNEPCo. Plaintiff provided no further details, and Peart denied

that he knew of her discrimination complaints prior to the filing

of this lawsuit. Plaintiff also testified that she made the same

complaint at the meeting.

Viewing the evidence in favor of Plaintiff, the court finds

that Plaintiff has raised a question of fact as to whether her

position was eliminated in retaliation for her engaging in a

protected activity.[94]

### 2. Adverse Action

"Adverse action" is more broadly defined for retaliation

claims as "extending beyond workplace-related or employment-related

retaliatory acts and harm." <u>Burlington N. & Santa Fe Ry.</u>, 548 U.S.

at 67. Therefore, adverse actions beyond ultimate employment

actions can support a retaliation claim. <u>See</u> <u>id.</u>

---

[94] The court acknowledges that Plaintiff filed a charge of discrimination on February 26, 2015, which is clearly protected activity; however, Plaintiff alleged no adverse action after this date.

In this case, the only adverse action occurring after Plaintiff's report of gender discrimination and retaliation was the elimination of her position with termination imminent if she was unable to secure another position within the company.

### 3. Causal Connection

To establish a prima-facie case of retaliation the causal connection need only be that the protected activity and the adverse action occurred very close in time. See Haire, 719 F.3d at 368 (citing Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001)).

Plaintiff easily overcomes this burden. She testified that she reported gender discrimination and retaliation only a few hours before learning that Defendant SIEP was eliminating her position.[95]

### 4. Remaining Burdens

For her retaliation claim, Plaintiff has met her prima-facie burden. As discussed in connection with Plaintiff's gender-discrimination claim, Defendant SIEP raised legitimate, nondiscriminatory reasons for the adverse actions taken. Therefore, Plaintiff must produce evidence that those reasons were a pretext for retaliation.

---

[95] To the extent that Plaintiff is alleging that the adverse actions she faced at the hands of Defendant SIEP were in retaliation for gender-discrimination complaints that she made while in Nigeria, the temporal chasm between those the protected activity and the adverse actions is further attenuated by the change in her work environment. Plaintiff's employers, supervisors, coworkers, and duties, not to mention countries of duty stations, all were different.

At the pretext stage of the burden-shifting analysis, closeness in time is insufficient to carry causation. <u>See</u> <u>Univ. of Tex. S.W. Med. Ctr. v. Nassar</u>, ___ U.S. ___, 133 S.Ct. 2517, 2533 (2013). "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." <u>Id.</u>

Shell Defendants' evidence indicates that Defendant SIEP decided in January 2015 to eliminate Plaintiff's position, weeks before her complaint of discrimination. Plaintiff offers no evidence to contradict this fact. Therefore, even if Plaintiff made a report of discrimination and retaliation immediately prior to the February 2015 meeting, the evidence precludes a finding that the elimination of Plaintiff's position was but-for Defendant SIEP's retaliatory action.

Plaintiff's retaliation claim fails as a matter of law.

## V. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Shell Defendants' motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period

mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 16th day of August, 2017.

_____
U.S. MAGISTRATE JUDGE